**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ARTHUR VARGAS, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>BARCLAYS BANK DELAWARE,<br><br>Defendant. | Case No. 1:24-cv-6549-LGS |

**MEMORANDUM OF LAW IN SUPPORT OF**
**BARCLAYS BANK DELAWARE'S MOTION TO COMPEL ARBITRATION**

Amy P. Lally (*pro hac vice* forthcoming)
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
(310) 595-9500

Christina Prusak Chianese
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
(212) 839-5300

Ian M. Ross (*pro hac vice* forthcoming)
SIDLEY AUSTIN LLP
1001 Brickell Bay Drive
Miami, FL 33131
(305) 391-5100

*Counsel for Defendant Barclays Bank Delaware*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ... 1
BACKGROUND ... 1
ARGUMENT ... 4
I. UNDER THE FEDERAL ARBITRATION ACT, ARBITRATION AGREEMENTS MUST BE ENFORCED ACCORDING TO THEIR TERMS ... 4
II. ARBITRATION MUST BE COMPELLED UNDER EACH OF THE RELEVANT BARCLAYS ACCOUNT-HOLDER AGREEMENTS ... 6
A. Plaintiff Agreed to Arbitrate His Claims on an Individual Basis by Entering Into a Customer Agreement With Barclays ... 6
1. Arbitration Must Be Compelled Under the Retail Banking Agreement, Which Delegates Questions of Arbitrability to the Arbitrator ... 7
2. Arbitration Must Be Compelled Under the Credit Card Agreement ... 8
B. Barclays Has Not Waived Its Arbitration Rights ... 10
III. THIS ACTION SHOULD BE STAYED PENDING ARBITRATION ... 11
CONCLUSION ... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)....................4

*AT&T Techs. v. Commc'ns. Workers of Am.*,
475 U.S. 643 (1986)....................5

*Barton v. Zhang*,
2024 WL 3228445 (S.D.N.Y. June 27, 2024)....................9

*Christensen v. Barclays Bank Del.*,
2019 WL 1921710 (D. Mass. Apr. 30, 2019)....................7

*Citizens Bank v. Alafabco, Inc.*,
539 U.S. 52 (2003)....................4

*Collins & Aikman Prods. Co. v. Bldg. Sys.*,
58 F.3d 16 (2d Cir. 1995)....................9, 10

*Coregis Ins. Co. v. Am. Health Found.*,
241 F.3d 123 (2d Cir. 2001)....................9

*Cote v. Barclays Bank Del.*,
2015 WL 251217 (S.D. Cal. Jan. 20, 2015)....................7

*Daly v. Citigroup Inc.*,
939 F.3d 415 (2d Cir. 2019)....................5

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985)....................4

*E. Hedinger AG v. Brainwave Sci., LLC*,
363 F. Supp. 3d 499 (D. Del. 2019)....................6

*ExxonMobil Oil Corp. v. TIG Ins. Co.*,
44 F.4th 163 (2d Cir. 2022)....................4, 5

*Fasano v. Li*,
2023 WL 6292579 (S.D.N.Y. Sept. 27, 2023)....................10

*Flores v. Nat'l Football League*,
2022 WL 3098388 (S.D.N.Y. Aug. 4, 2022)....................6

*Ginoyan v. Barclays Bank Del.*,
443 F. Supp. 3d 1136 (C.D. Cal. 2020) ....7

*Golightly v. Uber Techs.*,
2021 WL 3539146 (S.D.N.Y. Aug. 11, 2021) ....5

*Hartford Accident & Indem. Co. v. Swiss Reins. Am. Corp.*,
246 F.3d 219 (2d Cir. 2001) ....6

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019) ....5, 8

*JPMorgan Chase Bank, N.A. v. Javice*,
2023 WL 4420433 (D. Del. July 10, 2023) ....6

*Kaiser v. StubHub, Inc.*,
2024 WL 3445059 (S.D.N.Y. July 17, 2024) ....9

*Krause v. Barclays Bank Del.*,
2013 WL 6145261 (E.D. Cal. Nov. 21, 2013) ....7

*Mangahas v. Barclays Bank Del.*,
2016 WL 11002179 (C.D. Cal. May 9, 2016) ....7

*Morales v. Trans World Airlines*, *Inc.*,
504 U.S. 374 (1992) ....9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ....5

*Oppenheimer & Co. v. Neidhardt*,
56 F.3d 352 (2d Cir. 1995) ....5

*Poletti v. Pepsi-Cola Bottling Co. of N.Y., Inc.*,
2023 WL 5769498 (S.D.N.Y. Sept. 6, 2023) ....10

*Prasad v. Barclays Bank Del.*,
2020 WL 6083663 (C.D. Cal. July 29, 2020) ....7

*Rush v. Oppenheimer & Co.*,
779 F.2d 885 (2d Cir. 1985) ....10

*Smith v. Spizzirri*,
601 U.S. 472 (2024) ....4, 11

**Statutes**

9 U.S.C. § 2 ....4

9 U.S.C. § 3 ........................................ 1, 11

9 U.S.C. § 4 ........................................ 1

**Other Authorities**

16 C.F.R. § 313.3(o)(2) ........................................ 2

Defendant Barclays Bank Delaware ("Barclays") respectfully submits this memorandum of law in support of its motion, pursuant to Sections 3 and 4 of the Federal Arbitration Act, *see* 9 U.S.C. §§ 3, 4, to compel arbitration and stay this proceeding pending resolution of the arbitration.

## PRELIMINARY STATEMENT

Plaintiff Arthur Vargas pleads that he is a "Barclays consumer" who uses the Barclays website "to manage his accounts and the financial services provided to him by Barclays." Complaint ("Compl.") ¶ 103. He brings claims alleging that information related to his "customer interactions" with Barclays were unlawfully disclosed to Meta Platforms, Inc., formerly known as Facebook, Inc. ("Meta" or "Facebook"). Compl. ¶¶ 4, 9. But based on these allegations, his claims belong in individual arbitration, not this Court.

Despite Barclays multiple efforts to request basic information from Plaintiff regarding his account and the financial services he says were provided to him by Barclays, he has refused to provide any information to Barclays. However, he could not have "customer interactions," "manage his accounts," or receive "financial services" from Barclays unless he entered into an agreement with Barclays. And any such agreement requires mandatory arbitration of any disputes (other than small claims disputes not relevant here) arising from or relating to the customer's account or relationship with Barclays. As detailed below, Plaintiff has pled facts that can only be true if he has an agreement with Barclays, which means that he is bound to arbitrate his claims. Accordingly, this Court should compel arbitration and stay this action pending the arbitration.

## BACKGROUND[1]

Plaintiff brought this suit against Barclays by filing the operative complaint on August 29,

[1] For the purpose of this motion, Barclays accepts Plaintiff's factual allegations as true. Barclays reserves and does not waive its right to advance additional defenses to Plaintiff's claims and allegations should the motion to compel arbitration not be granted, and reserves and does not waive its right to challenge the truth of the facts as alleged by Plaintiff.

2024. He alleges that "Barclays's online banking website—www.banking.barclaysus.com—allows consumers to access their account information" and that "Barclays monitors and records its customers' interaction with its website while they are logged on to access their confidential account information." Compl. ¶ 3. He further claims that Barclays has a "practice of disclosing" what he deems "its customers' personal financial information" to Meta, via the "Meta Pixel [], snippet of programming code Barclays chose to install on its website." *Id.* ¶¶ 4, 7. According to Plaintiff, this alleged practice violates restrictions on, *inter alia*, "'[t]he fact that an individual is or has been one of [a financial institution's] customers or has obtained a financial product or service from [a financial institution.'" *Id.* ¶ 40(c) (quoting 16 C.F.R. § 313.3(o)(2)).

Although Plaintiff is vague regarding the nature of his relationship with Barclays—he describes himself as a "Barclays consumer" and largely focuses his allegations on alleged disclosures relating to Barclays customers—he pleads facts that can only be true if he holds an account at Barclays. Specifically, he pleads that he "remains a Barclays consumer who needs to use the Barclays website to *manage his accounts* and the *financial services provided to him* by Barclays." *Id.* ¶ 103 (emphasis added). And he pleads that he "has been accessing Barclays Bank's website regularly on a weekly basis in order to pay his bills," *id.* ¶ 50, and also that he "requests and obtains information regarding finances from Barclays Bank," *id.* ¶ 54. He further alleges that, as a result of these interactions, his information has been improperly shared with Meta. *Id.* ¶¶ 8, 103; *see also id.* ¶¶ 49-59. Based on these allegations, Plaintiff asserts various causes of action, *see id.* ¶¶ 74-138, including a claim for an alleged breach of "Barclays's Privacy Notice" which he claims "applies to customers, applicants, and former customers of Barclays," *id.* ¶ 120.

In order to hold a Barclays account, which Plaintiff must to engage in the activities on Barclays website he describes, a Barclays customer must agree to contracts containing arbitration

provisions. *See* Declaration of Rachel Wise ("Wise Decl.") ¶¶ 6, 9; *see also* Declaration of Stephenie Beauchamp ("Beauchamp Decl.") ¶¶ 6, 9.[2] Although, as discussed below, the arbitration provisions vary slightly by product, they all broadly require arbitration of any claims relating to the account-holder's account or relationship with Barclays.

Shortly after this action was filed, Barclays reached out to Plaintiffs' counsel to ask for Plaintiff's account information. Declaration of Christina Prusak Chianese ("Chianese Decl.") ¶ 3. Plaintiff's counsel, however, refused to disclosed *any* information without a court-ordered protective order. *Id.* ¶¶ 2-3. Although this response seemed to confirm that Plaintiff was an account-holder—clearly, Plaintiff otherwise could have simply said he did not have an account—it made little sense given that the *type* of Barclays account he holds or the Barclays-assigned number associated with that account are plainly non-confidential pieces of information. That is especially so as to Barclays—indeed, account numbers are *Barclays'* own proprietary information. Nonetheless, Barclays agreed to treat any disclosures as confidential. *Id.* ¶ 3. And when Plaintiff continued to refuse to provide any information, even clearly nonconfidential information, without a court-ordered protective order, Barclays offered to enter into a stipulation as requested if Plaintiff would agree that doing so would not waive Barclay's right to compel arbitration. *Id.* ¶ 7. Plaintiff refused by never responding to Barclay's offered compromise. *Id.*

Barclays sent a pre-motion letter to Plaintiff, explaining that because Plaintiff pleads facts that can only be true if he is an account-holder, he is necessarily bound by an arbitration clause requiring him to arbitrate this case. Chianese Decl., Ex. 2. In responding to the letter, Plaintiff

---

[2] To the extent that an account-holder initially agreed to an earlier version of the contract that lacked an arbitration clause, Barclays has modified that account-holder's contract to conform to the latest version as a condition of the account-holder continuing to receive services from Barclays. *See* Wise Decl. ¶ 10; *see also* Beauchamp Decl. ¶ 10.

never denied that he is an account-holder, but maintained that his claims were not arbitrable despite the existence of any agreement to arbitrate. Remarkably, Plaintiff pointed to the lack of a specific agreement referenced in the pre-motion letter even though his refusal to provide non-confidential account information was the reason the specific agreement was not referenced. Chianese Decl., Ex. 4. After Plaintiff refused to agree to arbitration, this Motion followed.

## ARGUMENT

### I. UNDER THE FEDERAL ARBITRATION ACT, ARBITRATION AGREEMENTS MUST BE ENFORCED ACCORDING TO THEIR TERMS

"Section 2 of the [FAA] makes agreements to arbitrate 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011) (quoting 9 U.S.C. § 2). It applies to any arbitration agreement that is "written" and in a "contract evidencing a transaction involving commerce." 9 U.S.C. § 2; *see also Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) ("[T]he term 'involving commerce' in the FAA [is] the functional equivalent of the more familiar term 'affecting commerce'–words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power."). Once a court determines that the parties to a litigation agreed to arbitrate a dispute, the FAA gives the court no discretion; rather, it must compel the parties to arbitrate and stay the action pending the outcome of the arbitration. *See Smith v. Spizzirri*, 601 U.S. 472, 475-76 (2024); *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

Under the FAA, "courts consider two factors when deciding if a dispute is arbitrable: (1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement encompasses the claims at issue." *ExxonMobil Oil Corp. v. TIG Ins. Co.*, 44 F.4th 163, 175 (2d Cir. 2022) (cleaned up).

There is a policy favoring arbitration and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Thus, under the FAA, an "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT&T Techs. v. Commc'ns. Workers of Am.*, 475 U.S. 643, 650 (1986) (cleaned up); *see also Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019) (same). Additionally, where an arbitration agreement "delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019). That is, "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Id.* at 67-68 (cleaned up).

"In deciding a motion to compel arbitration, courts apply a standard similar to that applicable for a motion for summary judgment. Courts must consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, and must draw all reasonable inferences in favor of the non-moving party." *ExxonMobil Oil*, 44 F.4th at 175 (cleaned up). At the same time, in order to defeat arbitration, "it is not sufficient for the party opposing arbitration to utter general denials of the facts on which the right to arbitration depends." *Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995). If a court finds that there is a genuine dispute of material fact as to whether a dispute should be compelled to arbitration, the court should order "limited discovery" on the question of arbitrability. *Golightly v. Uber Techs.*, 2021 WL 3539146,

at *3-4 (S.D.N.Y. Aug. 11, 2021); *see also Flores v. Nat'l Football League*, 2022 WL 3098388, at *2 (S.D.N.Y. Aug. 4, 2022) (same).

## II. ARBITRATION MUST BE COMPELLED UNDER EACH OF THE RELEVANT BARCLAYS ACCOUNT-HOLDER AGREEMENTS

In determining whether parties have agreed to arbitrate a dispute, courts consider two questions. First, they consider whether there is a valid agreement to arbitrate under the contract in question. *See Hartford Accident & Indem. Co. v. Swiss Reins. Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001) (cleaned up). Second, they determine whether the particular dispute in question falls within the scope of the arbitration agreement. *See id.* Here, Plaintiff's own allegations are such that the facts he pleads can only be true if he is a Barclays account-holder, *see supra* at 2-3, which would have required him to agree to a customer agreement with an arbitration provision. And because each of Barclays' arbitration provisions broadly requires disputes "arising out of or relating to" their account and customer relationships to be arbitrated, Plaintiff's claims plainly fall within the scope of his agreement to arbitrate.[3]

### A. Plaintiff Agreed to Arbitrate His Claims on an Individual Basis by Entering Into a Customer Agreement With Barclays

Barclays broadly offers two categories of consumer products, retail banking services and credit card services. For both sets of consumer products, Barclays requires all account-holders to agree to Barclays' customer agreements, all of which currently contain arbitration provisions. *See* Wise Decl. ¶ 6 ("Each of the different types of consumer accounts offered by Barclays requires

---

[3] Each of the relevant agreements has a Delaware choice of law clause, and Delaware courts routinely find arbitration agreements enforceable and compel arbitration. *See, e.g.*, *JPMorgan Chase Bank, N.A. v. Javice*, 2023 WL 4420433, at *3 (D. Del. July 10, 2023) (noting that "[t]he use of the phrase 'arise out of or relate to' indicates the parties intent that the arbitration clause would have a broad scope" and compelling arbitration); *see also E. Hedinger AG v. Brainwave Sci., LLC*, 363 F. Supp. 3d 499, 508 (D. Del. 2019) (noting that "[c]ourts in Delaware have found language similar to the 'arising out of or relating to' language to be indicative of a broad arbitration clause" and compelling arbitration).

the customer to enter into an account agreement with Barclays."); *see also* Beauchamp Decl. ¶ 6 (same). Specifically, all individual Barclays account-holders must agree to either a version of the Deposit Agreement (if they are banking customers) or a version of the Credit Card Agreement (if they are credit card customers). *See* Wise Decl. ¶ 6; *see also* Beauchamp Decl. ¶ 6. Based on his allegations that he receives financial services from and manages his accounts with Barclays, *see, e.g.*, Compl. ¶¶ 50, 54, 103, Plaintiff must be a party to at least one of these agreements. *See* Wise Decl. ¶ 9 ("Mr. Vargas could not have a consumer banking account, and could not access his account on the Barclays website to request and obtain information regarding his finances as alleged unless he has a Deposit Agreement with Barclays"); *see also* Beauchamp Decl. ¶ 9 ("Mr. Vargas could not have a credit card account, and could not access his account on the Barclays website to request and obtain information regarding his finances as alleged unless he has a credit card agreement with Barclays"). And under either form of agreement, arbitration must be compelled.[4]

### 1. Arbitration Must Be Compelled Under the Retail Banking Agreement, Which Delegates Questions of Arbitrability to the Arbitrator

If Plaintiff is a retail banking customer, then he is a party to a version of Barclays' Deposit Agreement. Wise Decl. ¶ 9. And under all operative versions of the Deposit Agreement, arbitration must be compelled because that agreement contains an arbitration clause with a delegation provision. As relevant here, all current versions of the Deposit Agreement provide:

> At the election of either you or us, any claim, dispute or controversy ("Claim") by either you or us against the other, arising from or relating in any way to this Agreement or your Account, or their

[4] Indeed, courts routinely enforce Barclays' arbitration provisions with respect to claims brought by customers. *See, e.g.*, *Ginoyan v. Barclays Bank Del.*, 443 F. Supp. 3d 1136, 1142 (C.D. Cal. 2020); *Prasad v. Barclays Bank Del.*, 2020 WL 6083663, at *3 (C.D. Cal. July 29, 2020); *Christensen v. Barclays Bank Del.*, 2019 WL 1921710, at *6 (D. Mass. Apr. 30, 2019); *Mangahas v. Barclays Bank Del.*, 2016 WL 11002179, at *3 (C.D. Cal. May 9, 2016); *Cote v. Barclays Bank Del.*, 2015 WL 251217, at *3 (S.D. Cal. Jan. 20, 2015); *Krause v. Barclays Bank Del.*, 2013 WL 6145261, at *3-4 (E.D. Cal. Nov. 21, 2013).

> establishment, or any transaction or activity on your Account, including (without limitation) Claims based on contract, tort (including intentional torts), fraud, agency, negligence, statutory or regulatory provisions or any other source of law and (except as otherwise specifically provided in this Agreement) Claims regarding the applicability of this arbitration provision or the validity of the entire Agreement, shall be resolved exclusively by arbitration.

Wise Decl., Ex. A, at pp. 34, 72-73, 110 (Deposit Agreement).[5]

This Agreement therefore provides for mandatory arbitration and unambiguously delegates the gateway question of arbitrability to arbitration by providing that "Claims regarding the applicability of this arbitration provision … shall be resolved exclusively by arbitration." *Id.* Accordingly, "a court may not decide the arbitrability issue," but must instead refer it to arbitration. *Henry Schein*, 586 U.S. at 69. And even if the scope of the arbitration clause were not delegated, arbitration should still be compelled because, as discussed *infra*, Plaintiff's claims "aris[e] from or relat[e]" to his "Account." Wise Decl., Ex. A, at pp. 34, 72, 110.

### 2. Arbitration Must Be Compelled Under the Credit Card Agreement

If Plaintiff is a credit card customer, then he is a party to a version Barclays' latest Credit Card Agreement. Beauchamp Decl. ¶ 9. The arbitration provision of that Agreement provides:

> This arbitration provision provides for binding arbitration of all Claims by either you or us against the other if either you or we choose to refer the Claim to arbitration. The terms "you," "we," and "us" are defined below for purposes of this arbitration provision. A "Claim" covered by this provision is any claim, dispute or controversy by either you or us against the other, arising from or relating in any way to this Agreement, your Account, any transaction or activity on your Account, our relationship, products or services provided by us or a third party in connection with this Agreement or your Account, including (without limitation) claims, disputes, or controversies based on contract, tort (including intentional torts), fraud, agency, negligence, statutory or regulatory provisions or any other source of

[5] Barclays' agreements also include a class action waiver. Barclays reserves the right to seek to have Plaintiff's class actions stricken and/or class certification denied based on his waiver of any purported right to file a putative class action.

> law and (except as otherwise specifically provided in this Agreement).

Beauchamp Decl., Ex. A, at p. 7 (Credit Card Agreement).[6]

Plaintiff's claims plainly fall within the ambit of this arbitration provision. The Second Circuit has described arbitration provisions using the phrase "'any claim or controversy arising out of or relating to'" as "the paradigm of a broad clause." *Collins & Aikman Prods. Co. v. Bldg. Sys.*, 58 F.3d 16, 20 (2d Cir. 1995). Indeed the "term 'related to' is typically defined [] broadly and is not necessarily tied to the concept of a causal connection." *Coregis Ins. Co. v. Am. Health Found.*, 241 F.3d 123, 128 (2d Cir. 2001); *see also Morales v. Trans World Airlines*, *Inc.*, 504 U.S. 374, 383 (1992) (holding that the ordinary meaning of "relating to" is "a broad one"); *see also Kaiser v. StubHub, Inc.*, 2024 WL 3445059, at *4 (S.D.N.Y. July 17, 2024) (describing arbitration clause with "'relating in any way to or arising out of'" as "relatively broad" and compelling arbitration); *see also Barton v. Zhang*, 2024 WL 3228445, at *5 (S.D.N.Y. June 27, 2024) (similar).

Here, Plaintiff's claims arise out of and relate to Plaintiff's use of "the Barclays website to manage his accounts and the financial services provided to him by Barclays." Compl. ¶ 103; *see also id.* ¶ 9 (Barclays "operates a website which allows consumers to access their account information through which it collects and retains the PII of its consumers, and discloses their PII to third party, Facebook."); *see also id.* ¶ 13 (Plaintiff "used Barclays's website to access their financial account information"); *see also id.* ¶ 50 ("Plaintiff has been accessing Barclays Bank's website regularly on a weekly basis in order to pay his bills."); *see also id.* ¶ 54 ("Plaintiff requests and obtains information regarding finances from Barclays Bank, and Barclays Bank maintains

[6] As explained in the Beauchamp Declaration, some Barclays credit card customers are party to an agreement with a slightly different version of this arbitration clause that only differs in its inclusion of claims, disputes, and controversies arising from "purchases with [customer's] Card from The Gap, Inc. (including any of its subsidiary brands)." Beauchamp. Decl. ¶ 8.

records of Plaintiff's search history and input history to this end."). Thus, his claims arise out of or relate to each of Plaintiff's "Account," the parties' "relationship," as well as "products or services provided by" Barclays.

Plaintiff's claims also fall within the scope of this arbitration clause because the alleged data disclosure also arises out of or relates to these things. The alleged data all relates to the customer's "Account" and the "products and services provided by" Barclays. *See, e.g.*, *id.* ¶ 34 ("The events transmit data showing the exact financial product (e.g. a specific Barclays card, investment product, or savings account) that the consumer obtains.")). Indeed, Plaintiff specifically pleads that a critical issue will be the question of whether Barclays' alleged data disclosures were consented to by Plaintiff, *see* Compl. ¶¶ 66(h), 77, which also will turn on Plaintiffs' accountholder agreements and the disclosures therein, *see Collins & Aikman Prods. Co.*, 58 F.3d at 22 (claim "relates" to contract if it is "not wholly independent of the contract"). And whether it is proper to disclose any data Barclays may have by virtue of providing services to Plaintiff certainly implicates Barclays' "relationship" with Plaintiff. *See Poletti v. Pepsi-Cola Bottling Co. of N.Y., Inc.*, 2023 WL 5769498, at *4 (S.D.N.Y. Sept. 6, 2023) (describing an arbitration clause covering "'arising out of, or, in connection with … the relationship of the parties'" as "quite broad" and compelling arbitration). Accordingly, Plaintiff's alleged claims clearly fall within the scope of his agreements to arbitrate with Barclays.

### B. Barclays Has Not Waived Its Arbitration Rights

There is no basis to find waiver of Barclays' arbitration rights in this case. Barclays has not filed a responsive pleading or taken any affirmative action to litigate the case in this Court prior to moving to compel arbitration and, in fact, immediately placed Plaintiff's counsel on notice of its intent to compel arbitration. *See, e.g.*, *Fasano v. Li*, 2023 WL 6292579, at *11 (S.D.N.Y. Sept. 27, 2023) (citing *Rush v. Oppenheimer & Co.*, 779 F.2d 885, 888 (2d Cir. 1985)) (even moving to

dismiss does not waive arbitration). Barclays hereby reserves its right and provides Plaintiff fair notice of its intention to enforce its applicable contractual right to compel arbitration against unnamed, putative class members.

## III. THIS ACTION SHOULD BE STAYED PENDING ARBITRATION

Under the Federal Arbitration Act, which is incorporated by the parties' agreements, this action should be stayed while Plaintiff's individual claims are arbitrated. *See* 9 U.S.C. § 3 (requiring court to issue a stay upon compelling arbitration); *see also Smith*, 601 U.S. at 475-76 (stay mandatory when claims are arbitrable).

## CONCLUSION

For the foregoing reasons, Barclays respectfully requests that the Court issue an order compelling arbitration and staying this proceeding pending resolution of the arbitration.

Dated: November 1, 2024

By: /s/ Christina Prusak Chianese
Christina Prusak Chianese
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599
Email: cchianese@sidley.com

Amy P. Lally (*pro hac vice* forthcoming)
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: (310) 595-9500
Facsimile: (310) 595-9501
Email: alally@sidley.com

Ian M. Ross (*pro hac vice* forthcoming)
SIDLEY AUSTIN LLP
1001 Brickell Bay Drive
Miami, FL 33131
Telephone: (305) 391-5100
Facsimile: (305) 391-5101
Email: iross@sidley.com

*Counsel for Defendant Barclays Bank Delaware*