**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ARTHUR VARGAS, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>BARCLAYS BANK DELAWARE,<br><br>Defendant. | No. 1:24-cv-06549-LGS<br><br>DECLARATION SUPPORTING MOTION TO COMPEL ARBITRATION-CONSUMER CREDIT CARD ACCOUNT |

**DECLARATION OF STEPHENIE BEAUCHAMP**

Pursuant to 28 U.S.C. § 1746, I, Stephenie Beauchamp, declare as follows:

1. I am over 18 years of age and am employed as Vice President of Bank Operations at Barclays Bank Delaware ("Barclays"). I am duly authorized to make this declaration on behalf of Barclays as a custodian of records. The facts stated in this declaration are based on my personal knowledge and Barclays' records.

2. Barclays is a federally insured state-chartered bank that provides personal banking, credit card products, and other financial services to consumers across the United States. Barclays is organized under the state laws of Delaware and its principal place of business is in Delaware.

3. I have been employed with Barclays since 2007. During that time, my job duties have included, acting as a records custodian for records related to Barclays' consumer credit card business. I am familiar with the policies and procedures employed by Barclays concerning the opening and servicing of customer accounts. I am familiar with the usual and customary business practices used by Barclays to provide its credit card account holders with copies of the credit card

agreements relating to their accounts. If called as a witness, I can testify to a court competently as to my knowledge of the facts contained herein.

4. I understand that Arthur Vargas has alleged that he "remains a Barclays consumer who needs to use the Barclays website to manage his accounts and the financial services provided to him by Barclays." Compl. ¶ 103. Mr. Vargas also alleges that he "requests and obtains information regarding finances" from Barclays, *id.* at ¶ 54, and uses the "website regularly on a weekly basis in order to pay his bills," *id.* at ¶ 50.

5. My understanding is that Mr. Vargas has been unwilling to provide an account number, his full mailing address, date of account opening, or social security number, but without any of that information, Barclays is unable to determine what type of account he has.

6. Each of the different types of consumer accounts offered by Barclays requires the customer to enter into an account agreement with Barclays. A Barclays customer can have either a deposit account or a credit card account. If Mr. Vargas has a deposit account, it is governed by a deposit agreement. If Mr. Vargas has a credit card account, it is governed by a credit card agreement. Any consumer who applies for an account including but not limited to via the Barclays website or the Barclays app would have been required to review the online Terms and Conditions applicable to each type of account and affirmatively click to agree to the Terms and Conditions of the applicable deposit agreement or credit card agreement. Those Terms provide that the consumer "agree[s] that any dispute between us will be resolved by binding Arbitration. Subsequently, the cardholder receives a credit card agreement that provides that the cardholder accepts the agreement by "signing, keeping, using or otherwise accepting your Card or Account." Ex. A, at pp. 2, 4, 6 (Credit Card Agreement).

7. Barclays' current, standard consumer credit card agreements for credit card accounts are attached as **Exhibit A**. The credit card agreements are all governed by Delaware law.

8. The credit card agreements include provisions mandating arbitration (or litigation in small claims court for certain small claims) for disputes arising from or relating in any way to the agreement, the customer's account, any transaction or activity on the customer's account, or the relationship, products, or services provided by Barclays relating to the customer's account, including claims, disputes, or controversies based on contract, tort (including intentional torts), fraud, agency, negligence, statutory or regulatory provisions or any other source of law. The provisions governing the scope of these arbitration clause are highlighted in **Exhibit A** and the two versions[1] of the provisions in the current agreements are excerpted below:

> This arbitration provision provides for binding arbitration of all Claims by either you or us against the other if either you or we choose to refer the Claim to arbitration. The terms "you," "we," and "us" are defined below for purposes of this arbitration provision. A "Claim" covered by this provision is any claim, dispute or controversy by either you or us against the other, arising from or relating in any way to this Agreement, your Account, any transaction or activity on your Account, our relationship, products or services provided by us or a third party in connection with this Agreement or your Account or purchases with your Card from The Gap, Inc. (including any of its subsidiary brands), including (without limitation) claims, disputes, or controversies based on contract, tort (including intentional torts), fraud, agency, negligence, statutory or regulatory provisions or any other source of law and (except as otherwise specifically provided in this Agreement). All issues shall be for the arbitrator to decide except issues related to the scope, enforceability, interpretation, or formation of this arbitration agreement, which shall be for the court to decide.

Ex. A, at pp. 3, 5 (Credit Card Agreement).

> This arbitration provision provides for binding arbitration of all Claims by either you or us against the other if either you or we choose to refer the Claim to arbitration. The terms "you," "we," and

[1] One version is for credit cards that issued in partnership with The Gap Inc. The second is for all other Barclays-issued credit cards.

> "us" are defined below for purposes of this arbitration provision. A "Claim" covered by this provision is any claim, dispute or controversy by either you or us against the other, arising from or relating in any way to this Agreement, your Account, any transaction or activity on your Account, our relationship, products or services provided by us or a third party in connection with this Agreement or your Account, including (without limitation) claims, disputes, or controversies based on contract, tort (including intentional torts), fraud, agency, negligence, statutory or regulatory provisions or any other source of law and (except as otherwise specifically provided in this Agreement). All issues shall be for the arbitrator to decide except issues related to the scope, enforceability, interpretation, or formation of this arbitration agreement, which shall be for the court to decide.

Ex. A, at p. 7 (Credit Card Agreement).

9. Mr. Vargas could not have a credit card account, and could not access his account on the Barclays website to request and obtain information regarding his finances as alleged unless he has a credit card agreement with Barclays, which contains one of the arbitration provision as excerpted above and attached.

10. Barclays' custom and practice is to issue a notice of change of terms in a credit card agreement to a credit card holder each time there is a change in the terms of that credit card account holder's credit card agreement. Thus, to the extent that there was a change in terms relating to Mr. Vargas's credit card agreement, he would have been provided notice of that change in terms.

11. Under the credit card agreements (and their predecessors in time), Mr. Vargas would still be bound by the arbitration provisions even if the account is open, closed or sold.

12. I declare under penalty of perjury under 28 U.S.C. § 1746 and the laws of the State of Delaware and the United States that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on October 31, 2024 in Wilmington, Delaware.

Stephenie Beauchamp

Stephenie Beauchamp
Vice President of Bank Operations
Barclays Bank Delaware