**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ARTHUR VARGAS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BARCLAYS BANK DELAWARE,<br><br>Defendant. | Case No. 1:24-cv-6549-LGS |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION**

# TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 2

A. The Court Should Deny Defendant's Motion to Compel Arbitration Because Defendant Has Failed to Meet its Burden to Prove an Enforceable Agreement to Arbitrate Exists .......... 2

B. Barclays Fails to Meet Its Burden to Prove That It Provided Plaintiff Notice of an Agreement to Arbitrate and that Plaintiff Agreed to Arbitrate His Claims .......... 4

1. Barclays Fails to Establish that Plaintiff was on Notice of an Agreement to Arbitrate .......... 5

2. Barclays Fails to Establish Plaintiff Unambiguously Assented to Arbitration .......... 9

3. Barclays Has Not Proffered Evidence of Notice to Plaintiff of Any Applicable Change of Terms .......... 11

III. CONCLUSION .......... 13

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Applied Energetics, Inc. v. NewOak Capital Markets, LLC*,
645 F.3d 522 (2d Cir. 2011) .................... 3

*Berkson v. Gogo LLC*,
97 F. Supp. 3d 359 (E.D.N.Y. Apr. 9, 2015) .................... 5, 6

*Cheng v. Oxford Health Plans, Inc.*,
2020 WL 3050736 (S.D.N.Y. June 8, 2020) .................... 11

*Coinbase, Inc. v. Suski*,
144 S. Ct. 1186 (2024) .................... 1, 2

*Cullinane v. Uber Techs., Inc.*,
893 F.3d 53 (1st Cir. 2018) .................... 10

*Doctors Assocs., Inc. v. Alemayehu*,
934 F.3d 245 (2d Cir. 2019) .................... 2

*Edmundson v. Klarna, Inc.*,
85 F.4th 695 (2d Cir. 2023) .................... 6

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995) .................... 3

*Hines v. Overstock.com, Inc.*,
668 F. Supp. 2d 362 (E.D.N.Y. 2009) .................... 7

*Kauders v. Uber Techs., Inc.*,
486 Mass. 557 (2021) .................... 10

*Lipsett v. Popular Bank*,
2024 WL 111247 (2d Cir. Jan. 10, 2024) .................... 1, 2, 5, 11

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017) .................... 5

*Morgan v. Sundance, Inc.*,
142 S. Ct. 1708 (2022) .................... 3

*Nguyen v. Barnes & Noble Inc*,
763 F.3d 1171 (9th Cir. 2014) .................... 7

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016) ........ 4, 5, 8, 13

*Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela,*
991 F.2d 42 (2d Cir. 1993) ........ 4

*Register.com, Inc. v. Verio, Inc.,*
356 F.3d 393 (2d Cir. 2004) ........ 4, 9

*Rightnour v. Tiffany & Co.,*
239 F. Supp. 3d 744 (S.D.N.Y. 2017) ........ 3, 11

*Schnabel v. Trilegiant Corp.,*
697 F.3d 110 (2d Cir. 2012) ........ 2, 10, 12

*Shron v. LendingClub Corp.,*
No. 19-6718, 2020 WL 3960249 (S.D.N.Y. July 13, 2020) ........ 4, 11

*Soliman v. Subway Franchisee Advertising Fund Trust, Ltd.,*
999 F.3d 828 (2d Cir. 2021) ........ 2, 6

*Specht v. Netscape Commc'ns Corp.,*
306 F.3d 17 (2d Cir. 2002) ........ 6, 7, 12

*Starke v. SquareTrade, Inc.,*
913 F.3d 279 (2d Cir. 2019) ........ 4

*Vincent v. National Debt Relief,*
No. 24-440, 2024 WL 3344227 (S.D.N.Y. July 8, 2024) ........ passim

*Volt Info. Scis. v. Bd. of Trs. of Leland Stanford Jr. Univ.,*
489 U.S. 468 (1989) ........ 2

**STATUTES**

15 U.S. C. §§ 6801 ........ 1

**RULES**

Federal Rule of Evidence 1002 ........ 13

Plaintiff Arthur Vargas ("Plaintiff"), on behalf of the proposed Class, by and through his undersigned counsel, submits the following opposition to Defendant Barclays Bank Delaware's ("Defendant" or "Barclays") Motion to Compel Arbitration ("Motion") and states as follows:

## I. INTRODUCTION

This action arises from Barclays's practice of unlawfully providing customer information to third-party Meta Platforms, Inc. without the customer's knowledge or permission. This occurs through the use of Meta Pixel, a snippet of programming code Barclays chose to install on its website that sends information about its users to Meta. Barclays does this in direct violation of the Gramm-Leach-Bliley Act ("GBLA"), 15 U.S. C. §§ 6801, which bars financial institutions, such as Barclays, from disclosing a consumer's "personal identifiable financial information" without advance notification and opt-out rights. In this lawsuit, Plaintiff seeks to hold Barclays accountable for its unlawful actions.

Instead of confronting the allegations directly, Barclays seeks to hide behind an "alleged" arbitration agreement, while failing to produce any arbitration agreement actually entered into by itself and Plaintiff. "Arbitration" is not some mystical force by which Barclays can create an agreement through the simple utterance of the word. Rather, as the Supreme Court of the United States has made clear time and again, "[a]rbitration is a matter of contract and consent, and we have long held that disputes are subject to arbitration if, and only if, the parties actually agreed to arbitrate those disputes." *Coinbase, Inc. v. Suski,* 144 S. Ct. 1186, 1191 (2024). Indeed, in affirming the denial of a motion to compel arbitration by one of Barclay's banking competitors, the Second Circuit recently held that "[i]t is a basic tenet of contract law that, in order [for an arbitration provision] to be binding, a contract requires a meeting of the minds and a manifestation of mutual assent." *Lipsett v. Popular Bank*, 2024 WL 111247, at *1 (2d Cir. Jan. 10, 2024) (affirming denial of a motion to compel arbitration and requiring claims to be heard in a court of law).

Barclays fails to bear its threshold burden of proving that a binding contract containing an arbitration agreement was formed between Plaintiff and Barclays. In its place, Barclays makes the conclusory statement that "customers must agree to contracts containing arbitration provisions" (Motion at 2-3) and "all individual Barclays account-holders must agree to either a version of the Deposit Agreement (if they are banking customers) or a version of the Credit Card Agreement (if they are credit card customers). Motion at 7. However, it provides no proof to support these legal conclusions. It never explains when or how those terms were allegedly presented nor how Plaintiff allegedly agreed to such terms. As shown below, the failure to produce the agreement leaves nothing to be enforced, and thus under Second Circuit law, this Court should deny Defendant's Motion to Compel.

## II. ARGUMENT

### A. The Court Should Deny Defendant's Motion to Compel Arbitration Because Defendant Has Failed to Meet its Burden to Prove an Enforceable Agreement to Arbitrate Exists.

As a preliminary matter, the threshold question of whether an agreement to arbitrate has been formed must be decided by the Court and cannot be delegated to an arbitrator. *Doctors Assocs., Inc. v. Alemayehu,* 934 F.3d 245, 251-52 (2d Cir. 2019); *see also Schnabel v. Trilegiant Corp.,* 697 F.3d 110, 118 (2d Cir. 2012) ("Inasmuch as the arbitrator has no authority of any kind with respect to a matter at issue absent an agreement to arbitrate, the question of whether such an agreement exists and is effective is necessarily for the court and not the arbitrator.").

Both the United States Supreme Court and Second Circuit have made clear that arbitration is a matter of contract, and Plaintiff cannot be compelled to arbitrate claims he did not agree to. *See Coinbase, Inc.* 144 S. Ct. at 1191; *Volt Info. Scis. v. Bd. of Trs. of Leland Stanford Jr. Univ.,* 489 U.S. 468, 478 (1989) (holding the Federal Arbitration Act (the "FAA") "does not require parties to arbitrate when they have not agreed to do so"); *Lipsett,* 2024 WL 111247, at *1; *Soliman*

*v. Subway Franchisee Advertising Fund Trust, Ltd.,* 999 F.3d 828, 834 (2d Cir. 2021) ("the FAA is not a substitute for contractual assent.").

Furthermore, the FAA prohibits courts from adopting any "special, arbitration-preferring procedural rules" that "tilt the playing field in favor of (or against) arbitration." *Morgan v. Sundance, Inc.,* 142 S. Ct. 1708, 1713–14 (2022). This new precedent is significant to this case because it supersedes prior case law, suggesting that there is a liberal policy in favor of arbitration or that the FAA requires the court to construe contracts in favor of arbitration. *Id.* at 1713 (clarifying that the pro-arbitration "federal policy is about treating arbitration contracts like all others, not about fostering arbitration"). Every court, including this Court, must consider the arbitration clause just as it would any other contract term. *Id.* ("Accordingly, a court must hold a party to its arbitration contract just as the court would to any other kind. But a court may not devise novel rules to favor arbitration over litigation."). This reasoning aligns with decisions in this Circuit which hold that the general presumption in favor of arbitration "does not apply to disputes concerning whether an agreement to arbitrate has been made." *Rightnour v. Tiffany & Co.,* 239 F. Supp. 3d 744, 750 (S.D.N.Y. 2017) (quoting *Applied Energetics, Inc. v. NewOak Capital Markets, LLC,* 645 F.3d 522, 526 (2d Cir. 2011)).

In determining whether a valid arbitration agreement exists, federal courts will "apply ordinary state law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995). Valid contract formation under New York law arises "only where there is a mutual meeting of the minds, ordinarily measured by an offer, acceptance, and consideration." *Vincent v. National Debt Relief,* No. 24-440, 2024 WL 3344227, at *5 (S.D.N.Y. July 8, 2024) (citations omitted). New York law further requires that the party seeking arbitration "bears the burden of proving that a valid arbitration agreement exists by a

preponderance of the evidence." *Shron v. LendingClub Corp.,* No. 19-6718, 2020 WL 3960249, at *3 (S.D.N.Y. July 13, 2020) (citing *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela,* 991 F.2d 42 (2d Cir. 1993)). The Court applies the summary judgment standard, including that the evidence is admissible. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016).

### B. Barclays Fails to Meet Its Burden to Prove That It Provided Plaintiff Notice of an Agreement to Arbitrate and that Plaintiff Agreed to Arbitrate His Claims.

Barclays cannot meet its burden of establishing that a valid, enforceable agreement to arbitrate was formed with Plaintiff. "While new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract." *Register.com, Inc. v. Verio, Inc.,* 356 F.3d 393, 403 (2d Cir. 2004). Indeed, "[t]he principles are the same in the online world." *Vincent,* 2024 WL 3344227, at *8 ("Principles of contract formation 'apply with equal force to contracts formed online.'") (citations omitted).

"Defendant, who bears the ultimate burden of proving the existence of an agreement to arbitrate, must show that Plaintiff had sufficient notice of the arbitration provision to establish a meeting of the minds." *Shron,* 2020 WL 3960249, at *4; *see also Starke v. SquareTrade, Inc.,* 913 F.3d 279, 289 (2d Cir. 2019) ("Generally, courts look to the basic elements of the offer and the acceptance to determine whether there was an objective meeting of the minds sufficient to give rise to a binding and enforceable contract.").

Simply being an account holder does not mean Barclays properly disclosed its terms or that Plaintiff's actions qualified as accepting those terms. Barclays conclusively asserts that its "customers must agree to contracts containing arbitration provisions", Motion at 2-3, and "all individual Barclays account-holders must agree to either a version of the Deposit Agreement (if they are banking customers) or a version of the Credit Card Agreement (if they are credit card

customers).” Motion at 7. But it never details: 1) how the terms were presented to Plaintiff, thereby meeting the requisites to constitute sufficient notice; and 2) what acts he supposedly took to agree to such terms. These missing details are critical because how those terms were presented and what acts allegedly constituted acceptance dictate whether they are, in fact, an enforceable agreement. Indeed, the Second Circuit recently addressed this issue in a similar situation where a banking defendant had failed to produce sufficient evidence. *See, e.g., Lipsett* 2024 WL 111247, at *1 (affirming denial of motion to compel arbitration and finding that “the…Notice and the…Agreement's arbitration provisions are insufficiently clear or conspicuous to represent a ‘definite offer’ to arbitrate this dispute”). This Court should similarly deny Barclays’ Motion.

### 1. Barclays Fails to Establish that Plaintiff was on Notice of an Agreement to Arbitrate

Barclays does not establish that it provided clear and conspicuous notice of its arbitration provision that the Second Circuit requires. *See Meyer v. Uber Techs., Inc.,* 868 F.3d 66, 75 (2d Cir. 2017) (determining “[w]hether a reasonably prudent user would be on inquiry notice turns on the ‘clarity and conspicuousness of arbitration terms’”). Moreover, “in the context of web-based contracts, . . . clarity and conspicuousness are a function of the design and content of the relevant interface.” *Id.* (citing *Nicosia*, 834 F.3d 220 at 233).

Barclays has yet to explain how these terms were presented to Plaintiff. If, for example, they were mere “browsewrap” terms, likely, they are not enforceable. “Browsewraps can take various forms but basically the website will contain a notice that—by merely using the services of, obtaining information from, or initiating applications within the website—the user is agreeing to and is bound by the site’s terms of service.” *Berkson v. Gogo LLC,* 97 F. Supp. 3d 359, 395 (E.D.N.Y. Apr. 9, 2015) (quotations omitted). “Because of the passive nature of acceptance in browsewrap agreements, courts closely examine the factual circumstances surrounding a

consumer's use." *Id.*; *see also Vincent,* 2024 WL 3344227, at *10 ("In the paradigmatic example of a contract being formed as a browsewrap agreement, the visitor continues to use a website or access information contained on it after being informed that such usage will be deemed to create a contractual relationship."). The Second Circuit has assessed the enforceability of these agreements through the application of a two-part inquiry: whether "(1) a reasonably prudent person would be on inquiry notice of the terms [seeking to be enforced] and (2) the user unambiguously manifests assent through conduct that a reasonable person would understand to constitute assent." *Edmundson v. Klarna, Inc.,* 85 F.4th 695, 703 (2d Cir. 2023) (quoting *Soliman,* 999 F.3d at 834; *Specht v. Netscape Commc'ns Corp.,* 306 F.3d 17, 30 (2d Cir. 2002) (alterations omitted)). Indeed, "[r]easonably conspicuous notice of the existence of contract terms and unambiguous manifestation of assent to those terms by consumers are essential if electronic bargaining is to have integrity and credibility." *Specht,* 306 F.3d at 35.

Courts routinely invalidate browsewrap agreements as unenforceable where users are required to scroll down the webpage to discover the terms. For example, in *Specht,* the Second Circuit refused to enforce an arbitration provision in a website's licensing terms *Id*. at 20. It held that users who downloaded Netscape's software had no reasonably conspicuous notice of arbitration where those hyperlinked terms were located below the download button. *Id*. A user would have to scroll to the very bottom of the webpage to view them. *Id.* The Court explained that "a reference to the existence of license terms on a submerged screen is not sufficient to place consumers on inquiry or constructive notice of those terms." *Id.* at 32.

Similarly, in *Hines v. Overstock.com, Inc.,* the Second Circuit applied New York and Utah law and affirmed the denial of defendant's motion to compel arbitration upon finding the plaintiff lacked constructive notice of the Terms and Conditions because 1) the website did not prompt her

to review them and 2) the link to the terms was not prominently displayed and 3) could not be viewed unless she scrolled to the bottom of the screen. *See Hines v. Overstock.com, Inc.,* 668 F. Supp. 2d 362, 367 (E.D.N.Y. 2009). "Overstock alleged simply than an agreement to arbitrate was made because the website's 'Terms and Conditions,' which included the arbitration clause, providing that 'Entering the Site will constitute your acceptance of these Terms and Conditions.'" *Id.* at 24. However, "[t]his assertion alone does not support a finding that a binding agreement existed" where the defendant "did not allege any facts tending to show that a user would have had actual or constructive knowledge of the Terms and Conditions." *Id.* at 25.

As another example, the Ninth Circuit in *Nguyen v. Barnes & Noble Inc.* refused to enforce a browsewrap agreement and noted that in instances "[w]here the link to a website's terms of use is buried at the bottom of the page or tucked away in obscure corners of the website where users are unlikely to see it, courts have refused to enforce the browsewrap agreement." 763 F.3d 1171, 1173 (9th Cir. 2014). In *Nguyen,* the defendant Barnes & Noble sought to compel its website users to arbitration based on its "Terms of Use" hyperlink that was located "in the bottom left-hand corner on every page" on its webpage and "appear[ed] directly below the relevant button a user must click on to proceed in the checkout process or just a few inches away." *Id.* at 1178. Nevertheless, the Court held that because the website "provides no notice to users nor prompts them to take any affirmative action to demonstrate assent, even close proximity of the hyperlink to the relevant buttons users must click on—without more—is insufficient to give rise to constructive notice." The Court continued: "[T]he onus must be on website owners to put users on notice of the terms to which they wish to bind consumers. Given the breadth of the range of technological savvy of online purchases, consumers cannot be expected to ferret out hyperlinks to terms and conditions to which they have no reason to suspect they will be bound." *Id.* at 1179; *see*

*also Nicosia,* 834 F.3d at 233 (finding "reasonable minds could disagree" as to whether Amazon's "hybrid" agreement provided adequate notice because "when terms are linked in obscure sections of a webpage that users are unlikely to see, courts will refuse to find constructive notice") (collecting cases)).

Recently, Judge Lewis J. Liman of the Southern District of New York denied arbitration where the defendant similarly argued that the plaintiff "unambiguously assented" to the Terms of Service simply by accessing and using defendant's website for debt relief services, where the hyperlinked terms were not "immediately visible when a visitor arrives at the Website" but rather, required the visitor "to scroll past several sections of information to see the Terms." *See Vincent,* 2024 WL 3344227, at *2 n.2; *8. The court conducted a detailed overview of the principles of enforcing contracts in the "online world" and noted that "the distinctive and unifying feature of all of the internet contract cases decided by the Second Circuit . . . is that the action or inaction that the courts have deemed to constitute unambiguous manifestation of assent follows, and does not precede, the time when the website visitor knew or should have known that a benefit was being offered pursuant to terms and that the visitor's conduct would constitute assent to the terms." *Id.* at *9. The court refused to find that the plaintiff's mere use of defendant's website constituted unambiguous assent to those browsewrap terms:

> The Terms of Service, which are available through a hyperlink at the bottom of the homepage, state that a visitor's use of the Website will be deemed to be an agreement to abide by Defendant's terms and that the visitor should not access or use the Website if she does not agree to the terms. But that hyperlink itself is not immediately visible to a visitor to the Website, and is visible only after the user has to scroll through several sections of content containing promotions for Defendant's product. . . . There would be no reason for such a visitor ever to scroll down to the hyperlink to the Terms of Service . . .

*Id.* at *11.

Absent any explanation for how the terms were presented to Plaintiff, the Court cannot simply take Barclays at its word that Plaintiff "must agree to contracts containing arbitration provisions." Rather, the burden lies squarely on Barclays to prove by a preponderance of admissible evidence that the terms were presented in such a way as to sufficiently put Plaintiff on notice. It has failed to do so, so its Motion must be denied.[1]

**2. Barclays Fails to Establish Plaintiff Unambiguously Assented to Arbitration**

Equally fatal to the Motion, Barclays failed to establish that Plaintiff ever assented to any of the terms it presented. It is well-settled in the Second Circuit that "[a] party cannot manifest assent to the terms and conditions of a contract before having an opportunity to review them; a party must be given some opportunity to reject or assent to proposed terms and conditions before forming a contract." *Register.com,* 356 F.3d at 430. This is true regardless of Plaintiff's website use because Plaintiff may ***never*** have had adequate notice of Barclays' Terms. Indeed, "[i]f the user is not on notice of the existence of terms and conditions prior to taking the specific action that would constitute assent, then there can have been no meeting of the minds and no contract." *Vincent,* 2024 WL 3344227, at *6.

Again, Barclays only made the conclusory argument that "all individual Barclays account-holders must agree to either a version of the Deposit Agreement (if they are banking customers) or a version of the Credit Card Agreement (if they are credit card customers)." Motion at 7. And Barclays assumes whatever Plaintiff allegedly did constituted assent without indicating what that assent looked like. This is insufficient for Barclays to meet its burden in this District Court.

---

[1] Barclays complains that Plaintiff did not provide certain account information. *See* Motion at 3. But Plaintiff is under no obligation to respond to Barclays' informal email requests prior to the opening of discovery. Moreover, Plaintiff made clear that a confidentiality order would be required before exchanging such information, which Barclays refused for strategic reasons. *See* ECF No. 21-3 at 2 (refusing to consider a confidentiality order because it might be seen as waiver). That Barclays decided to move forward with a motion on an affirmative defense, despite not having the evidence to meet its burden, lies squarely with Barclays.

In *Vincent*, for example, the court flatly rejected the "silence by assent" argument, holding that a plaintiff "cannot be deemed to have assented by failure to opt-out of terms she was not on inquiry notice of and therefore was not bound by in the first place":

> [Defendant's] theory presupposes the answer to the very question that is presented by this motion—whether Plaintiff is bound by the Terms of Service because she was on inquiry notice that there would be terms governing her use of the Website before she took action (or engaged in inaction) to unambiguously assent to the terms of service. Plaintiff was not on inquiry notice. This is not a case in which the defendant withholds a good or service or a benefit until *after* the visitor has an opportunity to be aware of Defendant's terms and to review them and the visitor (already on notice of the existence of terms) can be deemed to have accepted them by accepting the good or service or benefit. . . .
>
> If, as the Court has concluded, the Website is not of the sort that would suggest to the user that the content is being offered pursuant to terms (and there is no reason to believe that a repeat visitor would have scrolled down to the hyperlink for the Terms of Service in a first visit) then there is no way for Plaintiff to know there was an arbitration agreement to opt out of in the first place.

*Vincent,* 2024 WL 3344227 at *13-14.

Courts across the country are in accord with this District Court in holding that inadequate notice forecloses a finding of unambiguous assent. *See, e.g., Schnabel,* 697 F.3d at 128-29 (declining to conclude "passive conduct" of plaintiffs' continued credit-card payments alone constituted "a subjective understanding of the existence of the arbitration…provisions and an intent to be bound by them in exchange for the continued benefits" where the "plaintiffs were never put on inquiry notice of the arbitration provision" in the first place); *Cullinane v. Uber Techs., Inc.,* 893 F.3d 53, 64 (1st Cir. 2018) ("Because the Plaintiffs were not reasonably notified of the terms of the Agreement, they did not provide their unambiguous assent to those terms."); *Kauders v. Uber Techs., Inc.,* 486 Mass. 557, 579 (2021) (finding no reasonable manifestation of assent where the court "conclude[d] that there was not reasonable notice of the terms, a contract cannot have been formed here").

Barclays presents no authority to the contrary. Rather, it makes conclusory assertions that the terms were agreed to without providing any evidence to support such a conclusion. Barclays fails to meet its burden of proving formation by a preponderance of the evidence. *Shron,* 2020 WL 3960249, at *3. Again, there is no presumption in favor or arbitrability on the issue of formation. *Rightnour.,* 239 F. Supp. 3d at 750.

Indeed, in a similar situation involving one of Defendant's banking competitors, the Second Circuit affirmed denial of a motion to compel arbitration where the defendant had failed to come forward with sufficient evidence to support its argument. *Lipsett v. Popular Bank*, 2024 WL 111247 at **1-3 (affirming denial of motion to compel arbitration). For the same reason, Defendant's Motion must also be denied.

**3. Barclays Has Not Proffered Evidence of Notice to Plaintiff of Any Applicable Change of Terms**

Even if, *arguendo*, the Court adopts Barclays' tenuous argument that Plaintiff must have agreed to some terms to open an account, Barclays' admission that multiple versions of the arbitration agreement exist must prevent enforcement.

Courts have consistently found that uncertainty regarding the existence or content of an arbitration agreement precludes enforcement. For example, in *Cheng v. Oxford Health Plans, Inc.*, 2020 WL 3050736 (S.D.N.Y. June 8, 2020), the court denied a motion to compel arbitration where the defendant could not produce the specific agreement binding the plaintiff, emphasizing that the absence of the contract left critical questions unanswered.

Barclays hedges its bets by including three purported contracts for two different families of products Plaintiff *might* have assented to and by saying that these versions are the most *current*. But although Barclays acknowledges that "earlier versions of the contract … lacked an arbitration clause," it claims it "modified that account-holder contract to conform to the latest version as a

condition of the account-holder continuing to receive services from Barclays." Motion at 3, n.2. Yet Barclays provides no evidence as to how those initial terms were presented to Plaintiff, what actions he took to agree to them, what the initial terms were, including the change of terms, when they were updated, how often they were updated, and what acts Plaintiff allegedly took to assent to those changed terms. Barclay, itself, made the unilateral modification.

Courts have long recognized that such unilateral modifications to a contract require clear communication and the assent of the other party. In *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 123 (2d Cir. 2012), the Second Circuit refused to enforce an arbitration clause added to an agreement without proper notice to the plaintiffs. The Court emphasized that for significant changes to be binding, the party seeking enforcement must demonstrate that the changes were reasonably communicated and that the other party had an opportunity to accept or reject them. Similarly, in *Specht*, 306 F.3d at 29, the Second Circuit rejected an arbitration clause because the plaintiffs were not adequately informed of its existence.

All Defendant provides to the Court are conclusory allegations of Plaintiff's receipt, notice, and assent to any change of terms. Indeed, Barclays states that for its "two categories of consumer products," all account-holders must "agree to Barclays' customer agreements, all of which *currently* contain arbitration provisions." Motion at p. 6 (emphasis added). But Barclays admits that previous terms did not contain arbitration agreements, and it is incumbent upon Barclays to prove that Plaintiff is bound to one of the current versions and not a previous version. The Declarations further support this by reference to "currency." *See* Declaration of Stephenie Beauchamp, ¶ 7 ("Barclays' current, standard consumer credit card agreements…"); *see* Declaration of Rachel Wise, ¶ 7 ("All current versions of Barclays' standard deposit agreement…").

Both Ms. Beauchamp and Ms. Wise declare that "Barclays's custom and practice is to issue a notice of change of terms to a[n account] holder each time there is a change of terms of that [] account holder's [] agreement." *See* Declaration of Rachael Wise, ¶ 10, *see* Declaration of Stephenie Beauchamp, ¶ 10 (same).[2] But simply *saying* it does not make it so. These statements do not show what was actually done to put Plaintiff—or any other customer—on notice of the change and then obtain their consent to it; Barclays suggests only a policy it assumes it may take in an ideal world, without providing any actual, non-conclusory facts on which the Court may rest its decision.

## III. CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that the Court deny Barclays' Motion to Compel Arbitration.

Dated: November 22, 2024

Respectfully submitted,

*/s/ Charles D. Moore*
**REESE LLP**
121 N. Washington Ave., 4th Floor
Minneapolis, MN 55401
T: (212) 643-0500
cmoore@reesellp.com

**REESE LLP**
Michael R. Reese
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, NY 10025
T: (212) 643-0500
mreese@reesellp.com

[2] In ruling on a motion to compel arbitration, the evidence must be admissible. *See Nicosia*, 834 F.3d at 229. The declarations of Wise and Beauchamp are inadmissible on these points. Per Fed. R. Evid. 1002, Barclays must produce a copy of the document if it seeks to prove the content of that document. In this case, it seeks to prove that the earlier versions of the contract contained a change of terms clause, but a declaration merely saying that it did is inadmissible. Barclays must produce that actual document. Likewise, it claims these terms were communicated, but Barclays must produce a copy of the website or document showing that communication.

Kevin Laukaitis*
**LAUKAITIS LAW LLC**
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, PR 00907
T: (215) 789-4462
klaukaitis@laukaitislaw.com
**Pro Hac Vice* Application forthcoming

*Counsel for Plaintiff and the Proposed Class*