**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

ARTHUR VARGAS, *individually and on behalf of all others similarly situated*,

Plaintiff,

v.

BARCLAYS BANK DELAWARE,

Defendant.

Case No. 1:24-cv-6549-LGS

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**BARCLAYS BANK DELAWARE'S MOTION TO COMPEL ARBITRATION**

Amy P. Lally (admitted *pro hac vice*)
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
(310) 595-9500

Christina Prusak Chianese
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
(212) 839-5300

Ian M. Ross (admitted *pro hac vice*)
SIDLEY AUSTIN LLP
1001 Brickell Bay Drive
Miami, FL 33131
(305) 391-5100

*Counsel for Defendant Barclays Bank Delaware*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ........................................................................................................................ 3

I. PLAINTIFF FAILS TO REBUT BARCLAYS' EVIDENCE SHOWING THAT HE AGREED TO ARBITRATION ........................................................................................ 3

II. TO THE EXTENT THE COURT REQUIRES MORE SPECIFIC EVIDENCE, IT SHOULD ORDER LIMITED DISCOVERY ............................................................... 10

CONCLUSION ................................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Audish v. Am. Express Co.*,
2023 WL 2366888 (S.D.N.Y. Mar. 6, 2023) ....................7

*Banks v. Barclays Bank Credit Servs.*,
2018 WL 6576414 (M.D. Pa. Oct. 30, 2018) ....................4

*Bernsley v. Barclays Bank Del.*,
657 F. Supp. 3d 1327 (C.D. Cal. 2023) ....................7

*Cheng v. Oxford Health Plans, Inc.*,
2020 WL 3050736 (S.D.N.Y. June 8, 2020) ....................5

*Curtis v. JPMorgan Chase Bank, N.A.*,
2024 WL 283474 (S.D.N.Y. Jan. 25, 2024) ....................6

*DeSimone v. TIAA Bank, FSB*,
2021 WL 4198274 (S.D.N.Y. Sept. 14, 2021)....................3

*Eaton v. Barclays Bank Del.*,
2024 WL 1199904 (D. Haw. Mar. 20, 2024)....................7

*Flores v. Chime Fin., Inc.*,
2022 WL 873252 (S.D.N.Y. Mar. 23, 2022) ....................4

*Flores v. Nat'l Football League*,
2022 WL 3098388 (S.D.N.Y. Aug. 4, 2022)....................10

*Greenberg v. Ameriprise Fin. Servs., Inc.*,
2016 WL 3526025 (E.D.N.Y. Mar. 31, 2016)....................4

*Khowala v. Vivint Smart Home, Inc.*,
2024 WL 3638265 (S.D.N.Y. Aug. 1, 2024)....................10

*Lipsett v. Popular Bank*,
2024 WL 111247 (2d Cir. Jan. 10, 2024) ....................5

*Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
597 F.3d 84 (2d Cir. 2010)....................9

*Manning v. Energy Conversion Devices, Inc.*,
833 F.2d 1096 (2d Cir. 1987)....................8, 9

*McDougall v. Samsung Elecs. Am., Inc.*,
2023 WL 6445838 (S.D.N.Y. Oct. 3, 2023) ........................................................................6

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017)..............................................................................................6

*Morehouse v. Paypal Inc.*,
2022 WL 912966 (S.D.N.Y. Mar. 28, 2022) ....................................................................8

*Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela*,
991 F.2d 42 (2d Cir. 1993)..............................................................................................9

*Spates v. Uber Techs., Inc.*,
2023 WL 3506138 (S.D.N.Y. Mar. 31, 2023) ..................................................................8

*Tyger v. Barclays Bank*,
2021 WL 6845249 (W.D. Tenn. Oct. 25, 2021), *adopted by* 2022 WL 386101
(W.D. Tenn. Feb. 8, 2022) ..............................................................................................7

*Vincent v. Nat'l Debt Relief LLC*,
2024 WL 3344227 (S.D.N.Y. July 8, 2024) ................................................................5, 9

*Worthington v. JetSmarter, Inc.*,
2019 WL 4933635 (S.D.N.Y. Oct. 7, 2019) ..............................................................4, 5, 8

**Statutes**

Federal Arbitration Act, 9 U.S.C. §§ 3, 4 ..........................................................................1

Defendant Barclays Bank Delaware ("Barclays") respectfully submits this reply memorandum in support of its motion, pursuant to Sections 3 and 4 of the Federal Arbitration Act, *see* 9 U.S.C. §§ 3, 4, to compel arbitration and stay this case pending resolution of the arbitration.

## PRELIMINARY STATEMENT

Barclays' Motion to Compel Arbitration (the "Motion" or "Mot.")[1] established that each of its customers, when they open an account with Barclays, affirmatively agrees to arbitrate any dispute with Barclays. Based on Plaintiff's own allegations that he is a "Barclays consumer" who uses the Barclays website "to manage his accounts and the financial services provided to him by Barclays," Compl. ¶ 103, the Motion showed that Plaintiff agreed to arbitrate this dispute. Plaintiff's Response in Opposition to the Motion ("Response" or "Resp.") does not deny any of this: not once does Plaintiff actually assert (let alone provide any evidence showing) that he is ***not*** bound to arbitrate. Nor does he dispute that his claims fall within the scope of the arbitration clauses in Barclays' customer agreements. Instead, Plaintiff's Response seeks to hide behind his own obstructive behavior.

After Plaintiff filed this lawsuit, Barclays was unable to identify Plaintiff's specific account given that Barclays has a large number of customers and Arthur Vargas is a relatively common name. Wise Decl. ¶ 5; Beauchamp Decl. ¶ 5; *see also* Second Declaration of Rachel Wise ("Second Wise Decl.") ¶ 4; Second Declaration of Stephenie Beauchamp ("Second Beauchamp Decl.") ¶ 6. As part of Barclays' meet and confer efforts, Barclays asked Plaintiff to provide information that could be used to identify Plaintiff's account including information that is clearly not confidential as to Barclays, such as Plaintiff's account number. Plaintiff refused unless Barclays agreed to affirmatively seek the Court's entry of a confidentiality order. And when Barclays asked Plaintiff

[1] Unless otherwise indicated, capitalized and abbreviated terms have the same meaning as given in the Motion.

to confirm that he would not argue a waiver of Barclays' arbitration rights if this affirmative relief was sought, Plaintiff refused to agree. *See* Chianese Decl. ¶ 7.

Nevertheless, because the facts Plaintiff pled in the Complaint—including harm flowing from his "customer interactions" and management of "accounts" with Barclays, *see* Compl. ¶¶ 4, 50, 54, 103—could only be true if he is a Barclays account holder and so had entered into an agreement with Barclays that provided for arbitration, Barclays moved to compel arbitration. The Motion provided evidence that, although Plaintiff has refused to disclose any of the information Barclays would need to identify Plaintiff's account and the specific agreement he entered into with Barclays, ***all*** Barclays account holders must agree to arbitration in order to receive services from Barclays, including services like those Plaintiff alleges in the Complaint that he received.

In his Response, Plaintiff—again without denying that he is a Barclays account holder or even denying that he has agreed to arbitrate his dispute with Barclays—doubles down on his gamesmanship. He uses his own refusal to disclose basic information relevant to identifying his account with Barclays to argue that Barclays has not done enough to meet its burden to compel arbitration. Ignoring and never once refuting the evidence in the Motion that Barclays account holders are required to agree to arbitration while also never denying that he is a Barclays account holder, Plaintiff resorts to a litany of irrelevant hypotheticals that he does not even substantiate, much less claim apply to him. The majority of these concern a scenario where a consumer only agreed to an arbitration agreement through "browsewrap" even though (1) he never actually claims that this describes this case and (2) the evidence in the record shows that Barclays' website does not work this way. Plaintiff is quite obviously in full possession of the information that he says is necessary to decide this Motion, but rather than put that information in the record, Plaintiff is content to deny that information to not only Barclays, but also the Court.

Defendant respectfully submits that, for the reasons set forth in the Motion and those below, the Court should compel arbitration. In the alternative, the Court should order limited discovery on arbitrability so Plaintiff is required to provide the information necessary to identify his specific account and agreement to arbitrate with Barclays.

## ARGUMENT

### I. PLAINTIFF FAILS TO REBUT BARCLAYS' EVIDENCE SHOWING THAT HE AGREED TO ARBITRATION

The Motion makes clear that ***all*** Barclays customers are required to arbitrate their disputes with Barclays and shows exactly how those customers are provided with and assent to those agreements. Mot. at 6-9; Wise Decl. ¶ 6 ("Any customer who enrolled in an account via the Barclays website would have been required to affirmatively click and agree to the terms of the applicable deposit agreement or credit card agreement."); Beauchamp Decl. ¶ 6 ("Any consumer who applies for an account including but not limited to via the Barclays website or the Barclays app would have been required to review the online Terms and Conditions applicable to each type of account and affirmatively click to agree to the Terms and Conditions of the applicable deposit agreement or credit card agreement. … Subsequently, the cardholder receives a credit card agreement that provides that the cardholder accepts the agreement by 'signing, keeping, using or otherwise accepting your Card or Account.'"). Thus, for Plaintiff to claim that his own alleged "customer interactions" which derive from his "accounts and the financial services provided to him by Barclays" somehow are not subject to an agreement to arbitrate, *see* Compl. ¶¶ 4, 103, "there must be 'an unequivocal denial that the agreement had been made,' along with supporting evidence." *DeSimone v. TIAA Bank, FSB*, 2021 WL 4198274, at *8 (S.D.N.Y. Sept. 14, 2021) (citation omitted) (compelling arbitration where "Plaintiffs failed to submit any evidence opposing the motion" and "do not dispute that these Plaintiffs (or any Plaintiffs) received the applicable

Guides" containing the agreement to arbitrate); *see also Worthington v. JetSmarter, Inc.*, 2019 WL 4933635, at *5 (S.D.N.Y. Oct. 7, 2019) (similar). Plaintiff makes no attempt to meet this standard.

First, to the extent that Plaintiff's Response argues that Barclays has provided exemplars of its agreements instead of Plaintiff's own agreement, that argument should be rejected—"sample credit card agreements or exemplars of what a defendant normally gives to its customers [are] evidence of the written contract the plaintiff received" and courts can compel arbitration on that basis. *Banks v. Barclays Bank Credit Servs.*, 2018 WL 6576414 , at * 3 (M.D. Pa. Oct. 30, 2018). That is especially true where the evidence shows that an individual could not have become a customer without agreeing to arbitration and the plaintiff fails to submit any evidence of her own. *See Flores v. Chime Fin., Inc.*, 2022 WL 873252, at *5 (S.D.N.Y. Mar. 23, 2022) ("Given the steps that a potential Chime user must complete in order to create an account, as outlined in Ms. Srivastava's sworn declaration, Ms. Flores would not have been able to create a Chime account without affirmatively agreeing to the terms and conditions on the page with the clickwrap agreement, and accordingly, no reasonable trier of fact could find that she did not assent to the arbitration … Plaintiff does not dispute that she successfully created a Chime account, which required her to agree to the terms."); *Greenberg v. Ameriprise Fin. Servs., Inc.*, 2016 WL 3526025, at *5 (E.D.N.Y. Mar. 31, 2016) ("The Plaintiff has not submitted any evidence to rebut the Defendants' showing, supported by sworn declarations, that he was required to sign a Form U-4 as a pre-condition to registering with FINRA. Thus, the Court does not find that the Defendants' failure to produce a Form U-4 signed by the Plaintiff creates a genuine issue of fact as to whether the Plaintiff agreed to arbitrate disputes according to the terms of the FINRA Code, as the Plaintiff appears to suggest.").

As Judge Failla explained in *Worthington v. JetSmarter* in rejecting arguments similar to

those advanced by Plaintiff here, "[w]hen presented with arbitration agreements in contracts formed online between companies and their customers, courts routinely rely on affidavits and declarations … and screenshots … submitted by the company's employee describing and depicting how the customer manifested assent to the company's arbitration provision." 2019 WL 4933635, at *5 (collecting cases, and rejecting plaintiffs' argument that employee declarant "is speculating, without evidence and based only on 'experience,' that Plaintiffs 'must have' agreed to JetSmarter's terms since they paid JetSmarter"); *contra* Resp. at 2, 4-5. That is precisely the evidence that was submitted here in support of the Motion, and for which Plaintiff's Response submits no contrary evidence. *See* Wise Decl. ¶¶ 6-9; Beauchamp Decl. ¶¶ 6-9; *see also* Second Wise Decl. ¶¶ 2-3; Second Beauchamp Decl. ¶¶ 2-4.

By contrast, the case law Plaintiff cites involved cases where the party resisting arbitration submitted evidence or where the defendant's evidence itself demonstrated that there was no actual assent. *See, e.g.*, *Lipsett v. Popular Bank*, 2024 WL 111247, at *2 (2d Cir. Jan. 10, 2024) ("In sum, the specific language of the 2013-14 materials does not permit existing accountholders like Lipsett to clearly understand their options for rejecting arbitration."); *Vincent v. Nat'l Debt Relief LLC*, 2024 WL 3344227, at *2-4, 2 n.2 (S.D.N.Y. July 8, 2024) (relying extensively on a "declaration … submitted by Plaintiff in opposition to the motion to compel" that contradicted the defendant's "characterization of the Website").[2] That is not the case here and Plaintiff does not actually claim otherwise. Rather, instead of making arguments about "the specific language" and evidence Barclays submitted in support of its Motion (or submitting contrary evidence), Plaintiff resorts to

[2] Plaintiff claims that in "*Cheng v. Oxford Health Plans, Inc.*, 2020 WL 3050736 (S.D.N.Y. June 8, 2020), the court denied a motion to compel arbitration where the defendant could not produce the specific agreement binding the plaintiff, emphasizing that the absence of the contract left critical questions unanswered." Resp. at 11. But no Southern District of New York case by this name appears to exist. And the Westlaw number in the cite goes to a Northern District of California case that has nothing to do with arbitration. *See E&B Nat. Res. Mgmt. Corp. v. City of Alameda*, 2020 WL 3050736 (N.D. Cal. June 8, 2020).

hypotheticals, which is plainly insufficient.

Second, Plaintiff's Response rests mainly on an argument that, if Barclays' website *hypothetically* had a "browsewrap" structure that only provided for "passive" agreement to an arbitration provision, then no valid contract would be formed by using that website. *See* Resp. at 2-11.

But Plaintiff's hypothetical has nothing to do with this case. The evidence submitted in support of Barclays' Motion shows that Barclays' website features a "clickwrap" agreement that requires a consumer to review the terms and affirmatively agree to them. Specially, the evidence showed that those with online accounts, which is what Plaintiff seems to allege he has, "would have been required to review the online Terms and Conditions applicable to each type of account and affirmatively click to agree to the Terms and Conditions of the applicable deposit agreement or credit card agreement." Beauchamp Decl. ¶ 6; *see also* Wise Decl. ¶ 6. And, because Plaintiff has raised the "browsewrap" argument in his Response, Barclays in connection with this reply brief has submitted screenshots of the clickwrap agreements on Barclays' website corroborating this description. Second Wise Decl. ¶ 2; Second Beauchamp Decl. ¶ 2. Courts routinely enforce these sorts of "clickwrap" agreements. *See, e.g.*, *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017) ("Courts routinely uphold clickwrap agreements for the principal reason that the user has affirmatively assented to the terms of agreement by clicking 'I agree.'"); *Curtis v. JPMorgan Chase Bank, N.A.*, 2024 WL 283474, at *3-4 (S.D.N.Y. Jan. 25, 2024) (Schofield, J.) (finding assent to online arbitration agreements where terms were presented "in a hyperlink temporally and spatially near the button to manifest assent on a page otherwise uncluttered by text" and consumers "were required to click a box acknowledging that they agreed to the [online terms] before they could obtain access to digital products"); *McDougall v. Samsung Elecs. Am., Inc.*, 2023 WL

6445838, at *4 (S.D.N.Y. Oct. 3, 2023) (Schofield, J.) (finding assent to arbitration agreement because the plaintiff "had reasonably conspicuous notice of the Terms and Conditions, including the Arbitration Agreement" and "unambiguously manifested her assent to those terms" where a consumer "could not have proceeded with the setup process without clicking the checkboxes directly next to 'Terms and conditions' and 'I have read and agree to all of the above'" with the terms being "hyperlinked"). Here, Plaintiff does not dispute that each of these agreements contains arbitration provisions that require arbitration of this dispute.

Additionally, the Motion provided evidence (also not rebutted in the Response) showing that with respect to all Barclays credit card accounts, after the credit card application is approved, the cardholder will then "receive[] a credit card agreement that provides that the cardholder accepts the agreement by 'signing, keeping, using or otherwise accepting your Card or Account.'" Beauchamp Decl. ¶ 6 (quoting Ex. A, at pp. 2, 4, 6); *see also* Second Beauchamp Decl. ¶ 3 (explaining that this is true "regardless of how the consumer has applied (whether online or through some other method)").[3] These agreements were attached as evidence and—as Plaintiff does not dispute—include this dispute within their scope. Beauchamp Decl. ¶ 8. Courts have routinely held that Barclays cardmembers must be compelled to arbitration through this contract formation mechanism. *See, e.g.*, *Eaton v. Barclays Bank Del.*, 2024 WL 1199904, at *4 (D. Haw. Mar. 20, 2024); *Bernsley v. Barclays Bank Del.*, 657 F. Supp. 3d 1327, 1335 (C.D. Cal. 2023); *Tyger v. Barclays Bank*, 2021 WL 6845249, at *3 (W.D. Tenn. Oct. 25, 2021), *adopted by* 2022 WL 386101 (W.D. Tenn. Feb. 8, 2022); *see also Audish v. Am. Express Co.*, 2023 WL 2366888, at *4 (S.D.N.Y. Mar. 6, 2023) ("Under New York law, the acceptance and use of a credit card demonstrates acceptance of the conditions in a Cardholder Agreement.") (cleaned up) (collecting

[3] In contrast to Barclays' credit cards, a consumer can only sign up for a Barclays deposit account online. *See* Second Wise Decl. ¶ 2.

cases); *Morehouse v. Paypal Inc.*, 2022 WL 912966, at *5 (S.D.N.Y. Mar. 28, 2022) (same).

In other words, the record shows that, contrary to Plaintiff's hypotheticals, this case has nothing to do with a "browsewrap" agreement. Plaintiff has no response, objection, or acknowledgment of this evidence, nor does he even deny that he agreed to arbitration. That alone should be dispositive: it is well-settled that, "[a] party resisting arbitration on the ground that no agreement to arbitrate exists must submit sufficient evidentiary facts in support of this claim." *Manning v. Energy Conversion Devices, Inc.*, 833 F.2d 1096, 1103 (2d Cir. 1987). For example, in *Spates v. Uber Techs., Inc.*, 2023 WL 3506138 (S.D.N.Y. Mar. 31, 2023), the plaintiff did "not dispute that she accepted Uber's Terms of Use for riders, which includes an Arbitration Provision," but instead merely contested the adequacy of the defendant's evidence that she did. *Id.* at *2. The court held that without any sort of actual denial, the plaintiff's "failure to respond to an argument effectively concedes the argument" and that "she cannot claim that she did not agree to arbitrate, and she is bound by the Arbitration Provision." *Id.*; *see also JetSmarter, Inc.*, 2019 WL 4933635, at *5 (rejecting challenges to defendant's evidence of agreement to arbitrate by virtue of plaintiff's "assent to JetSmarter's Membership Agreement" where "Plaintiffs have submitted *no* evidence to the Court to rebut or otherwise contradict the facts contained in the [employee] Declaration and its attached exhibits").

Finally, Plaintiff argues that arbitration should be denied because Barclays has failed to submit evidence that he received adequate notice of changes to the arbitration agreement. *See* Resp. at 11-13. But again this is an irrelevant hypothetical: Plaintiff never claims that his initial agreement with Barclays lacked an arbitration clause that covers this dispute and also does not contend that, even if it did, he did not receive adequate notice of a change in terms of his initial agreement to provide for arbitration.

As Plaintiff acknowledges (Resp. at 12), the Motion established that all prior Barclays customer agreements have been updated to provide for arbitration, and the accompanying declarations attached all versions of the arbitration provisions that are currently included in Barclays customer agreements. *See* Wise Decl. ¶¶ 7, 10; *see also* Beauchamp Decl. ¶¶ 7, 10. And as noted, "[a] party resisting arbitration on the ground that no agreement to arbitrate exists must submit sufficient evidentiary facts in support of this claim." *Manning*, 833 F.2d at 1103. Plaintiff simply has no actual evidence or argument negating Barclays' showing that he agreed to arbitration when he became a Barclays customer. *See Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela*, 991 F.2d 42, 46 (2d Cir. 1993) ("[I]n determining whether the parties have agreed to arbitrate, we apply the ordinary preponderance of the evidence standard.").

In any event, Barclays did submit evidence that it is Barclays' practice to send notice of changes to agreements. *See* Beauchamp Decl. ¶ 10; Wise Decl. ¶ 10. Plaintiff claims the declarations are inadmissible on this point (the only time he even acknowledges Barclays' declarations). But courts in the Second Circuit rely on such evidence about "office procedures" to find that notices were received. *See Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 597 F.3d 84, 92 (2d Cir. 2010) ("[A] presumption of receipt arises where, as here, the record establishes office procedures, followed in the regular course of business."). And if Plaintiff believed that any notice was inadequate, he should have submitted contrary evidence of his own, instead of trying to withhold as much information about himself as possible so as to prevent Barclays from being able to identify his specific account and agreement. *See, e.g.*, *Vincent*, 2024 WL 3344227, at *2 n.2.

## II. TO THE EXTENT THE COURT REQUIRES MORE SPECIFIC EVIDENCE, IT SHOULD ORDER LIMITED DISCOVERY

Barclays has met its burden on establishing that all customer agreements contain an agreement to arbitrate; however, if the Court would like the specific agreement and date of Plaintiff's consent to that agreement, the Court should order "limited discovery" on the question of arbitrability before deciding the motion to compel. *Khowala v. Vivint Smart Home, Inc.*, 2024 WL 3638265, at *5 (S.D.N.Y. Aug. 1, 2024) (granting request for "limited discovery" on arbitrability); *cf. Flores v. Nat'l Football League*, 2022 WL 3098388, at *2 (S.D.N.Y. Aug. 4, 2022) ("Accordingly, in the Second Circuit, discovery on a motion to compel arbitration is appropriate when the party opposing arbitration 'comes forth with reliable evidence that is more than a naked assertion that it did not intend to be bound' by the arbitration agreement.") (cleaned up). Such discovery would put an end to Plaintiff's obstructive gamesmanship. A two-hour deposition and limited interrogatories (*i.e.*, limited to information sufficient to identify his account and related agreement with Barclays) would be sufficient, and Barclays could submit an additional brief in support of the Motion within two weeks after. Although Barclays maintains that it has already sufficiently shown that arbitration should be compelled, once it has Plaintiff's specific account information—information that Plaintiff will inevitably have to reveal at some point—Barclays will be able to identify and submit for the Court's consideration the specific agreement in which Plaintiff agreed to arbitrate this dispute.

## CONCLUSION

For the foregoing reasons and those stated in its opening Motion, Barclays respectfully requests that the Court issue an order compelling arbitration and staying this proceeding pending resolution of the arbitration.

Dated: December 6, 2024

By: /s/ *Christina Prusak Chianese*

Christina Prusak Chianese
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599
Email: cchianese@sidley.com

Amy P. Lally (admitted *pro hac vice*)
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: (310) 595-9500
Facsimile: (310) 595-9501
Email: alally@sidley.com

Ian M. Ross (admitted *pro hac vice*)
SIDLEY AUSTIN LLP
1001 Brickell Bay Drive
Miami, FL 33131
Telephone: (305) 391-5100
Facsimile: (305) 391-5101
Email: iross@sidley.com

*Counsel for Defendant Barclays Bank Delaware*