**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ARTHUR VARGAS, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>BARCLAYS BANK DELAWARE,<br><br>Defendant. | No. 1:24-cv-06549-LGS<br><br>DECLARATION SUPPORTING RENEWED MOTION TO COMPEL ARBITRATION |

**THIRD DECLARATION OF STEPHENIE BEAUCHAMP**

Pursuant to 28 U.S.C. § 1746, I, Stephenie Beauchamp, declare as follows:

1. I am over 18 years of age and am employed as Vice President of Bank Operations at Barclays Bank Delaware ("Barclays"). I am duly authorized to make this declaration on behalf of Barclays as a custodian of records. The facts stated in this declaration are based on my personal knowledge and Barclays' records.

2. Barclays is a federally insured state-chartered bank that provides personal banking, credit card products, and other financial services to consumers across the United States. Barclays is organized under the state laws of Delaware and its principal place of business is in Delaware.

3. I have been employed with Barclays since 2007. During that time, my job duties have included acting as a records custodian for records related to Barclays' consumer credit card business. I am familiar with the policies and procedures employed by Barclays concerning the opening and servicing of customer accounts. I am familiar with the usual and customary business practices used by Barclays to provide its credit card account holders with copies of the credit card

agreements relating to their accounts. If called as a witness, I can testify to a court competently as to my knowledge of the facts contained herein.

4. Barclays maintains notes in relation to each of its customer credit card accounts as part of its customary business practices. Since at least 2002, it has been the regular course of business for Barclays for an employee or representative of Barclays, with knowledge of the act or event recorded in a note, to make the note or to transmit information to be included in such a note at or near the time the act or event occurred or reasonably soon thereafter. Barclays' computer systems also generate notes automatically based on actions taken by customers.

5. I understand from information provided by his counsel that Plaintiff's legal name is Leopold Bennett and that he has three credit card accounts with Barclays: (1) a Barclays View-branded credit card (formerly an iTunes-branded credit card) with an account number ending in [redacted] ("Barclays View"); a Upromise-branded credit card with an account number ending in [redacted] ("Upromise"); and a JetBlue-branded credit card with an account number ending in [redacted] ("JetBlue").

6. I have reviewed Barclays' business records relating to Plaintiff's three credit card accounts. The records referred to herein were made and kept in the ordinary course of the Barclays' business, and were prepared in the normal course of business at or near the time of the events to which they refer or reflect. I have reviewed Plaintiff's credit card account file, including records of account application, cardmember agreements, notices of changes to those agreements, and account access, servicing and payment histories, and am familiar with their contents.

**Barclays View Account**

7. According to the notes maintained in relation to Plaintiff's Barclays View account, on or about November 21, 2006, Plaintiff applied for the Barclays View account by completing

and submitting an application. In doing so, Plaintiff provided [redacted] as his mailing address ("Home Address") for the account. On or about the same day, November 21, 2006, Barclays approved Plaintiff's application.

8. In accordance with its customary procedures, after Barclays approves a customer's credit card account application, Barclays creates a credit card account with unique identifying information, including an account number. Based on the type of credit card account, a specific Cardmember Agreement and card activation instructions are assigned to the account. Shortly after approval, the credit card is generated and delivered to the address provided by the customer via First Class United States Postal Service ("USPS") mail along with the designated Cardmember Agreement and card activation instructions. These documents are mailed in a single package, called a "Card Mailer." The Card Mailer is generated in a clean room environment and every piece is weighed to ensure that all operative documents are included in the Card Mailer. The back of each credit card states, "This card is issued by Barclays Bank Delaware . . . Its use is subject to the terms of your Cardmember Agreement."

9. Consistent with this custom, on or about November 21, 2006, Barclays sent Plaintiff his Card Mailer via First Class Mail for the Barclays View account, which included the credit card for the account, Cardmember Agreement, and card activation instructions. A true and correct copy of this Cardmember Agreement (the "Barclays View Cardmember Agreement") is attached hereto as **Exhibit A**.

10. The Card Mailer for the Barclays View account was mailed via USPS First Class Mail to the Home Address provided by Plaintiff on the application. Barclays has no record of this Card Mailer or any of its contents being returned to Barclays. Thereafter, Plaintiff began using his

Barclays View account. Plaintiff made charges on the account and made payments to the account beginning in or around December 12, 2006.

11. The Barclays View Cardmember Agreement provides: "By signing, keeping or using your Card or Account, you agree to the terms and conditions of this Agreement." *Id.* at 2.

12. The Barclays View Cardmember Agreement contained an arbitration provision. *See id.* at 1.

13. The Barclays View Cardmember Agreement further provides that Barclay can change the Agreement "at any time" and "[a]s permitted by applicable law." *Id.* at 1.

14. According to the notes maintained in relation to Plaintiff's Barclays View account, on or about January 10, 2013, Barclays mailed a document addressed to Plaintiff via USPS First Class Mail to the Home Address containing a notice of an "Amendment to [Plaintiff's Barclays View] Cardmember Agreement." A copy of this document is attached hereto as **Exhibit B**.[1] Barclays has no record of this document being returned to Barclays. This document stated that "[w]e are substituting the following provisions for the corresponding ones in your Cardmember Agreement," including the "Arbitration Provision." *Id.* at 1.

15. The notice then provided an amended arbitration provision for the Barclays View account. *See id.* at 3.

16. According to the notes maintained in relation to Plaintiff's Barclays View account, on August 18, 2024, Barclays issued a "Notice About Changes" to his Barclays View Cardmember Agreement's arbitration provision. A true and correct copy of this document is attached hereto as

[1] This copy is a true and correct copy except that it is addressed to Plaintiff's counsel's office rather than Plaintiff's Home Address. Because of the age of this document, Barclays no longer has an individual copy of the notice, and the copy provided was generated by a software product based on information in Barclays' records. Although the content of the communication matches exactly what was sent to Plaintiff historically, the software auto-populated the address of the regenerated copy with the customer's "current" mailing address. Pursuant to Barclays' standard practice, based on the ongoing litigation, the Plaintiff's current mailing address is now listed as Plaintiff's counsel's address.

**Exhibit C**. The notice was included with the monthly statement for Plaintiff's Barclays View account for the period ending on August 16, 2024. The statement provided: "Please review the Important Changes to Your Account Terms information detailed at the end of this Billing Statement." *Id.* at 3. Because Plaintiff has opted into receiving paperless statements, on the date that the monthly statement and notice of change were issued, Plaintiff was sent an email notification at the email address he provided to Barclays [redacted] that this document was available to be viewed on his Barclays online account. Barclays has no record of receiving a bounce-back notice for this email. According to the notes maintained by Barclays, Plaintiff signed into his Barclays outline account on August 30, 2024, 12 days after receiving this notice.

17. The updated arbitration provision in the August 18, 2024 notice provides, in pertinent part:

> A "Claim" covered by this provision is any claim, dispute or controversy by either you or us against the other, arising from or relating in any way to this Agreement, your Account, any transaction or activity on your Account, our relationship, products or services provided by us or a third party in connection with this Agreement or your Account[.]

*Id.* at 9.

**<u>Upromise Account</u>**

18. According to the notes maintained in relation to Plaintiff's Upromise account, on or about July 24, 2015, Plaintiff applied for his Upromise account by completing and submitting an application. In doing so, Plaintiff provided the Home Address for the account. On or about July 25, 2015, Barclays approved Plaintiff's application.

19. Consistent with its customary practice as described in paragraph 8, on or about July 26, 2015, Barclays mailed Plaintiff his Card Mailer for the Upromise account, which included the

credit card for the account, Cardmember Agreement, and card activation instructions. A true and correct copy of this Cardmember Agreement (the "Upromise Cardmember Agreement") is attached hereto as **Exhibit D**.

20. The Card Mailer for the Upromise account was mailed via USPS First Class Mail to the Home Address provided by Plaintiff on the application. Barclays has no record of this Card Mailer or any of its contents being returned to Barclays. Plaintiff made charges on the account and made payments to the account beginning in or around August 11, 2015.

21. The Upromise Cardmember Agreement provides: "By signing, keeping, using or otherwise accepting your Card or Account, you agree to the terms and conditions of this Agreement." *Id.* at 5.

22. The Upromise Cardmember Agreement contained an arbitration provision. *See id.* at 6.

23. The Upromise Cardmember Agreement further provides that Barclays "can change this Agreement … as permitted by applicable law." *Id.* at 5.

24. According to the notes maintained in relation to Plaintiff's Upromise account, on August 20, 2024, Barclays issued a "Notice About Changes" to his Upromise Cardmember Agreement's arbitration provision. A true and correct copy of this document is attached hereto as **Exhibit E**. The notice was included with the monthly statement for Plaintiff's Upromise account for the period ending on August 19, 2024. The statement provided: "Please review the Important Changes to Your Account Terms information detailed at the end of this Billing Statement." *Id.* at 3. Because Plaintiff has opted into receiving paperless statements, on the date that the monthly statement and notice of change were issued, Plaintiff was sent an email notification at the email address he provided to Barclays [redacted] that this document was available to

be viewed on his Barclays online account. Barclays has no record of receiving a bounce-back notice for this email. According to the notes maintained by Barclays, Plaintiff signed into his Barclays outline account on August 30, 2024, 10 days after receiving this notice.

25. The amended arbitration provision in the August 20, 2024 notice provides, in pertinent part:

> A "Claim" covered by this provision is any claim, dispute or controversy by either you or us against the other, arising from or relating in any way to this Agreement, your Account, any transaction or activity on your Account, our relationship, products or services provided by us or a third party in connection with this Agreement or your Account[.]

*Id.* at 9.

**JetBlue Account**

26. According to the notes maintained in relation to Plaintiff's JetBlue account, on or about March 23, 2016, Plaintiff applied for his JetBlue account by completing and submitting an application. In doing so, Plaintiff provided the Home Address as his mailing address for this account. On or about March 25, 2016, Barclays approved Plaintiff's application.

27. Consistent with its customary practice as described in paragraph 8, on or about March 25, 2016, Barclays mailed Plaintiff his Card Mailer for the JetBlue account, which included the credit card for the account, Cardmember Agreement, and card activation instructions. A true and correct copy of this Cardmember Agreement (the "JetBlue Cardmember Agreement") is attached hereto as **Exhibit F**.

28. The Card Mailer for the JetBlue account was mailed via USPS First Class Mail to the Home Address provided by Plaintiff on the application. Barclays has no record of this Card Mailer or any of its contents being returned to Barclays. Plaintiff made charges on the account and made payments to the account beginning in or around March 1, 2017.

29. The JetBlue Cardmember Agreement provides: "By signing, keeping, using or otherwise accepting your Card or Account, you agree to the terms and conditions of this Agreement." *Id.* at 5.

30. The JetBlue Cardmember Agreement contained an arbitration provision. *See id*. at 6.

31. The JetBlue Cardmember Agreement further provides that Barclays "can change this Agreement … as permitted by applicable law." *Id.* at 5.

32. According to the notes maintained in relation to Plaintiff's JetBlue account, on September 5, 2024, Barclays issued a "Notice About Changes" to his JetBlue Cardmember Agreement's arbitration provision. A true and correct copy of this document is attached hereto as **Exhibit G**. The notice was included with the monthly statement for Plaintiff's JetBlue account for the period ending on September 4, 2024. The statement provided: "Please review the Important Changes to Your Account Terms information detailed at the end of this Billing Statement." *Id.* at 3. Because Plaintiff has opted into receiving paperless statements, on the date that the monthly statement and notice of change were issued, Plaintiff was sent an email notification at the email address he provided to Barclays [redacted] that this document was available to be viewed on his Barclays online account. Barclays has no record of receiving a bounce-back notice for this email. According to the notes maintained by Barclays, Plaintiff signed into his Barclays outline account on September 10, 2024, 5 days after receiving this notice.

33. The amended arbitration provision in the September 5, 2024 notice provides, in pertinent part:

> A "Claim" covered by this provision is any claim, dispute or controversy by either you or us against the other, arising from or relating in any way to this Agreement, your Account, any transaction or activity on your Account, our relationship, products

> or services provided by us or a third party in connection with this Agreement or your Account[.]

*Id.* at 9.

34. I declare under penalty of perjury under 28 U.S.C. § 1746 and the laws of the State of Delaware and the United States that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on February 25, 2025 in Wilmington, Delaware.

Stephenie Beauchamp

Stephenie Beauchamp
Vice President of Bank Operations
Barclays Bank Delaware