**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

LEOPOLD BENNETT, *individually and on behalf of all others similarly situated*,

Plaintiff,

v.

BARCLAYS BANK DELAWARE,

Defendant.

Case No. 1:24-cv-6549-LGS

# REPLY MEMORANDUM OF LAW IN SUPPORT OF BARCLAYS BANK DELAWARE'S RENEWED MOTION TO COMPEL ARBITRATION

Amy P. Lally (admitted *pro hac vice*)
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
(310) 595-9500

Christina Prusak Chianese
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
(212) 839-5300

Ian M. Ross (admitted *pro hac vice*)
SIDLEY AUSTIN LLP
1001 Brickell Bay Drive
Miami, FL 33131
(305) 391-5100

*Counsel for Defendant Barclays Bank Delaware*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........ 1
ARGUMENT ........ 2
I. PLAINTIFF RECEIVED THE ARBITRATION AGREEMENTS ........ 2
II. PLAINTIFF ASSENTED TO THE ARBITRATION AGREEMENTS ........ 5
III. PLAINTIFF'S G.B.L. § 349 ARGUMENTS ARE MERITLESS ........ 7
A. The "Effective Vindication" Exception Does Not Require Plaintiff's G.B.L. § 349 Injunctive Relief Claim To Be Heard In Court ........ 7
B. The Agreements Do Not Contain Poison Pill Language ........ 10
CONCLUSION ........ 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013) ... 7, 8, 10

*Avail 1 LLC v. Varlas*,
680 F. Supp. 3d 265 (E.D.N.Y. 2023) ... 5

*Benitez v. Valentino U.S.A., Inc.*,
2024 WL 1347725 (S.D.N.Y. Mar. 29, 2024) ... 5

*Boule v. Credit One Bank*,
2016 WL 3015251 (S.D.N.Y. May 11, 2016) ... 3, 5

*Braidwood Mgmt., Inc. v. Becerra*,
104 F.4th 930 (5th Cir. 2024) ... 9

*Brecher v. Midland Credit Mgmt.*,
2019 WL 1171476 (E.D.N.Y. Mar. 13, 2019) ... 4

*Capitol Records, LLC v. Vimeo, LLC*,
972 F. Supp. 2d 500 (S.D.N.Y. 2013) ... 2

*Cedeno v. Sasson*,
100 F.4th 386 (2d Cir. 2024) ... 8, 9, 10

*CIT Bank N.A. v. Schiffman*,
948 F.3d 529 (2d Cir. 2020) ... 2

*Clookey v. Citibank, N.A.*,
2015 WL 8484514 (N.D.N.Y. Dec. 9, 2015) ... 7

*Epic Games, Inc. v. Apple, Inc.*,
73 F.4th 785 (9th Cir. 2023) ... 9

*Filipkowski v. Bethpage Fed. Credit Union*,
2021 WL 826016 (E.D.N.Y. Mar. 4, 2021) ... 3, 5

*Frankel v. Citicorp Ins. Servs.*,
2015 WL 6021534 (E.D.N.Y. Oct. 14, 2015) ... 8

*Georgia v. President of the United States*,
46 F.4th 1283 (11th Cir. 2022) ... 9

*Gingras v. Think Finance, Inc.*,
922 F.3d 112 (2d Cir. 2019)....................................................................................8

*Hamm v. Capsule Corp.*,
2022 WL 4468028 (S.D.N.Y. Sept. 26, 2022)..............................................................4

*Hughes v. United States*,
953 F.2d 531 (9th Cir. 1992) ........................................................................................5

*Johnson v. Walt Disney Parks and Resorts U.S., Inc.*,
2022 WL 16915741 (11th Cir. Nov. 14, 2022)..............................................................4

*Lipsett v. Popular Bank*,
2024 WL 111247 (2d Cir. Jan. 10, 2024) .....................................................................6

*Liu v. TD Ameritrade, Inc.*,
2020 WL 2113219 (E.D.N.Y. May 4, 2020) ...............................................................2, 5

*Manigault v. Macy's East, LLC*,
318 F. App'x 6 (2d Cir. 2009) ......................................................................................2

*Marcario v. Midland Credit Mgmt.*,
2017 WL 4792238 (E.D.N.Y. Oct. 23, 2017)...............................................................4

*McArdle v. AT&T Mobility LLC*,
2017 WL 4354998 (N.D. Cal. Oct. 2, 2017)...............................................................10

*Morehouse v. Paypal Inc.*,
2022 WL 912966 (S.D.N.Y. Mar. 28, 2022) ..............................................................3, 8

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016)..........................................................................................4

*Pace v. Air & Liquid Sys. Corp.*,
171 F. Supp. 3d 254 (S.D.N.Y. 2016)...........................................................................5

*Samms v. Abrams*,
198 F. Supp. 3d 311 (S.D.N.Y. 2016)...........................................................................9

*Santos v. Murdock*,
243 F.3d 681 (2d Cir. 2001)..........................................................................................4

*Schnabel v. Trilegiant Corp.*,
697 F.3d 110 (2d Cir. 2012)..........................................................................................7

*Smith v. City of New York*,
697 F. App'x 88 (2d Cir. 2017) .....................................................................................4

*State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*,
120 F.4th 59 (2d Cir. 2024) ....................................................................................7, 8

*Trujillo v. Volt Mgmt. Corp.*,
846 F. App'x 233 (5th Cir. 2021) ..........................................................................5

*Velez v. Credit One Bank*,
2016 WL 324963 (E.D.N.Y. Jan. 25, 2016) ...........................................................7

*Viking River Cruises, Inc. v. Moriana*,
596 U.S. 639 (2022)...............................................................................................8

*Weiss v. Am. Express Nat'l Bank*,
2020 WL 6807628 (S.D.N.Y. Nov. 18, 2020)..........................................................3

*Xu v. City of New York*,
2023 WL 4285031 (2d Cir. June 30, 2023) ............................................................4

*Yorke v. TSE Grp. LLC*,
2019 WL 3219384 (S.D.N.Y. July 17, 2019) ..........................................................5

**Statutes**

5 Del. C. § 952(a).........................................................................................................6

N.Y. G.B.L. § 349 ........................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 23 .......................................................................................................10

Fed. R. Civ. P. 56 .........................................................................................................4

**PRELIMINARY STATEMENT**

After months of obfuscation, including use of an alias that led to unnecessary briefing, this Court compelled Plaintiff to disclose his identity, which allowed Defendant Barclays Bank Delaware ("Barclays") to identify his accounts. Barclays then filed a renewed motion to compel arbitration ( "Motion" or "Mot.")[1] showing that Plaintiff's Credit Card Agreements each require him to arbitrate this dispute.

In response, Plaintiff does not contest the salient facts. He does not dispute that he received the Credit Card Agreements, each containing arbitration agreements, that he used each card which was acceptance under the agreements' terms, and that *each* agreement (both originally and as amended) is *by itself* a basis for the Court to compel arbitration in full.

Plaintiff's Opposition ( "Opposition" or "Opp.") instead seeks to avoid arbitration through a hodgepodge of meritless arguments. First, although Plaintiff never disputes that he received the initial Cardmember Agreements in the mail, Plaintiff raises a bizarre (and faulty) "best evidence" objection to the sworn declaration Barclays submitted. But the evidence submitted, both of Barclays' customary mailing practices and of Barclays specifically mailing the agreements at issue here, is sufficient to show Plaintiff received the agreements and satisfies the evidentiary standard on a motion to compel arbitration. Second, while not disputing that he used the credit cards after receiving them, Plaintiff contends that use does not equate to assent, but he again is wrong under the relevant case law and the terms of the agreements. Third and finally, Plaintiff claims that the "effective vindication" exception to arbitration requires that he be permitted to pursue his claim for injunctive relief under G.B.L. § 349 in court, but cannot explain how arbitration would prevent

---

[1] Capitalized terms have the same meaning given in the Motion.

him from obtaining the relief he seeks, or reconcile his argument with the many cases that have compelled arbitration in this precise context. The Court should compel this dispute to arbitration.

## ARGUMENT

### I. PLAINTIFF RECEIVED THE ARBITRATION AGREEMENTS

Barclays' Motion showed that Plaintiff was sent each of the initial arbitration agreements for his three accounts in the mail. *See* Mot. 2-5, 11-12. Specifically, Barclays submitted a declaration explaining its practice of sending the relevant Cardmember Agreement along with the credit card for a new account, stating the dates Plaintiff opened his accounts, and attaching the documents sent to Plaintiff.

Plaintiff does not dispute this evidence; instead, he tries to avoid it, claiming that the declaration's descriptions of documents violate the best evidence rule. *See* Opp. 2-9. This is both factually and legally erroneous.

As an initial matter, Plaintiff ignores Barclays' *uncontroverted* evidence not subject to this objection, which by itself is sufficient to compel arbitration. Ms. Beauchamp testified that Barclays' customary procedure is and has been to mail the Cardmember Agreement containing the terms and conditions for a given credit card with that card to the customer. *See* Beauchamp Decl. ¶ 8; *see also* Opp. 3-8 (list of paragraphs to which Plaintiff objects that does not include this testimony).[2] As Barclays explained, *see* Mot. 12, under New York law, "proof of a standard office mailing procedure gives rise to a presumption that a notice was received." *CIT Bank N.A. v. Schiffman*, 948 F.3d 529, 533 (2d Cir. 2020); *see also Manigault v. Macy's East, LLC*, 318 F. App'x 6, 7 (2d Cir. 2009) (similar). Plaintiff does not acknowledge let alone rebut this

---

[2] An employee may testify as to practices that "that pre-date his employment," *Capitol Records, LLC v. Vimeo, LLC*, 972 F. Supp. 2d 500, 508 n.7 (S.D.N.Y. 2013), *vacated in part on other grounds*, 826 F.3d 78 (2d Cir. 2016), in addition to records that pre-date their employment, *Liu v. TD Ameritrade, Inc.*, 2020 WL 2113219, at *5 (E.D.N.Y. May 4, 2020).

presumption, or deny receiving any of the agreements mailed to him. On these grounds alone, his challenge to the sufficiency of Barclays' evidence fails.

Additionally, with respect to the Upromise and JetBlue accounts, Barclays submitted documentary evidence of the account opening dates—specifically the Card Mailers Barclays attached as exhibits, which listed the account opening dates. *See* Beauchamp Decl., Ex. D at 1 (Upromise, "Account Open Date: 07/24/2015"); Ex. F at 1 (JetBlue, "Account Open Date: 03/23/2016").[3] And Barclays also introduced documents *custom-addressed* to Plaintiff containing the arbitration agreements as evidence of their mailing. *See* Beauchamp Decl., Ex. D, Ex. F.

Courts in this Circuit routinely compel arbitration on this or less evidence—particularly where the defendant does not deny receiving the agreement. *See, e.g.*, *Morehouse v. Paypal Inc.*, 2022 WL 912966, at *5 (S.D.N.Y. Mar. 28, 2022) (compelling arbitration based on testimony that defendant's "standard practice is to send the Cardholder Agreement to a user along with the card itself"); *Filipkowski v. Bethpage Fed. Credit Union*, 2021 WL 826016, at *4 (E.D.N.Y. Mar. 4, 2021) (compelling arbitration based on testimony about "office practice" because "[t]here is no requirement that the affiant either personally perform or oversee the mailing" and defendant submitted "documents with intelligent barcodes, addressed to Plaintiff"); *Weiss v. Am. Express Nat'l Bank*, 2020 WL 6807628, at *2 (S.D.N.Y. Nov. 18, 2020) (compelling arbitration when "[a] custodian of records for AMEX testified that the Cardholder Agreement was mailed to Weiss with her credit card, as is 'American Express's standard business practice'"); *Boule v. Credit One Bank*, 2016 WL 3015251, at *3 (S.D.N.Y. May 11, 2016) (compelling arbitration based on testimony

[3] Contrary to Plaintiff's suggestion, *see* Opp. 9, Barclays did offer a JetBlue card in March 2016. *See* Beauchamp Decl., Ex. F at 1 (written record); Beauchamp Reply Decl. ¶ 3.

about "customary policy" and an "exemplar" agreement).[4]

Moreover, Plaintiff is incorrect that a declarant cannot testify as to the contents of documents on a motion to compel arbitration. The premise of his argument is that a motion to compel arbitration, like a motion for summary judgment, must be supported by "admissible evidence," *see* Opp. 3 (cleaned up), but this is wrong. Declarations on summary judgment need only "contain evidence that will be presented in an admissible form at trial." *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001). That is, "[m]aterial relied on at summary judgment need not be admissible in the form presented to the district court." *Xu v. City of New York*, 2023 WL 4285031, at *3 (2d Cir. June 30, 2023).[5]

Although "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence," Fed. R. Civ. P. 56(c)(2), Plaintiff makes no such objection. Nor could he, as Beauchamp's declaration makes clear that the facts could be presented in admissible form. *See Smith v. City of New York*, 697 F. App'x 88, 89 (2d Cir. 2017) (documents properly considered even assuming inadmissibility because facts contained therein could be introduced through live testimony). Courts have repeatedly rejected similar "best evidence rule" objections because parties need not "submit evidence … in the precise form it would be presented in at trial." *Hamm v. Capsule Corp.*, 2022 WL 4468028, at *5-6 (S.D.N.Y. Sept. 26, 2022) (compelling arbitration); *see also Johnson v. Walt Disney Parks and Resorts U.S.,*

---

[4] *See also Brecher v. Midland Credit Mgmt.*, 2019 WL 1171476, at *5 (E.D.N.Y. Mar. 13, 2019) (similar); *Marcario v. Midland Credit Mgmt.*, 2017 WL 4792238, at *4 (E.D.N.Y. Oct. 23, 2017) (similar).

[5] *Nicosia v. Amazon.com, Inc.*, (Opp. 3) declined to treat a motion to dismiss as a motion to compel arbitration and so did not consider the evidence presented, but still confirmed that on a motion to compel arbitration a court should "consider all relevant, admissible evidence … together with affidavits,"—a recognition that the affidavits themselves may not be admissible. 834 F.3d 220, 229 (2d Cir. 2016) (cleaned up).

*Inc.*, 2022 WL 16915741, at *3 n.5 (11th Cir. Nov. 14, 2022); *Trujillo v. Volt Mgmt. Corp.*, 846 F. App'x 233, 237 (5th Cir. 2021); *Hughes v. United States*, 953 F.2d 531, 543 (9th Cir. 1992).

It is for this reason that courts (both on summary judgment and motions to compel arbitration) have repeatedly held that "[a]ffiants may testify as to the contents of records they reviewed in their official capacity." *Benitez v. Valentino U.S.A., Inc.*, 2024 WL 1347725, at *4 (S.D.N.Y. Mar. 29, 2024) (cleaned up); *see also Avail 1 LLC v. Varlas*, 680 F. Supp. 3d 265, 275 (E.D.N.Y. 2023) (similar); *Liu v. TD Ameritrade, Inc.*, 2020 WL 2113219, at *5 (E.D.N.Y. May 4, 2020) (similar); *Boule*, 2016 WL 3015251 at *3 (similar); *Pace v. Air & Liquid Sys. Corp.*, 171 F. Supp. 3d 254, 272 (S.D.N.Y. 2016) (similar). The outlier cases cited by Plaintiff, *see* Opp. 7-8, are unavailing because they make no attempt to reconcile their reasoning with this rule, and simply assert that evidence must be in admissible form without explaining why or citing authority.

In any event, and for the avoidance of any doubt, in light of the challenges raised by Plaintiff, Ms. Beauchamp's reply declaration submits the underlying records, which moots Plaintiff's objection. *See* Fourth Declaration of Stephenie Beauchamp ("Beauchamp Reply Decl."), Exs. H-L; *Filipkowski*, 2021 WL 826016 at *1 (considering evidence submitted on reply on motion to compel arbitration); *Yorke v. TSE Grp. LLC*, 2019 WL 3219384, at *2 (S.D.N.Y. July 17, 2019) (same and collecting cases).

## II. PLAINTIFF ASSENTED TO THE ARBITRATION AGREEMENTS

Barclays also showed that Plaintiff is bound to the arbitration agreements at issue. The initial terms (containing arbitration agreements) stated that Plaintiff would accept the agreement by using the card, which Plaintiff does not dispute he did. *See* Mot. 3-5. As many cases hold, this is sufficient to create a binding arbitration agreement. *See* Mot. 11-13 (collecting cases).

Barclays further explained that Barclays properly amended the agreements by including notices of changes in Plaintiff's monthly account statements, which was "permitted by applicable

law," in this case, 5 Del. C. § 952(a). *See* Mot. 13-15.

Plaintiff never acknowledges the application of Delaware law or authority cited by Barclays, and instead invokes *Lipsett v. Popular Bank*, 2024 WL 111247 (2d Cir. Jan. 10, 2024) to claim he never assented to arbitration. He is wrong.

As to the original agreements mailed to him, *Lipsett* has no bearing as it did not concern assent to arbitration in connection with the opening of a new credit card account by using a credit card—it concerned instead notice of the addition of an arbitration provision to a pre-existing bank account agreement. *Lipsett*, 2024 WL 111247 at *1. Because here Plaintiff's initial card agreements each had an agreement to arbitrate, *Lipsett* does nothing to disturb the weight of authority (which Plaintiff ignores) holding that an agreement to arbitrate is formed where, like here, the credit card is used after receiving the terms along with the agreement in the mail. *See* Mot. 11-13 (collecting cases). Indeed, in *Lipsett*, the court was concerned that the arbitration terms were "insufficiently clear or conspicuous" because the notice "misleadingly state[d] that there '*continues* to be a Mandatory Arbitration Provision,'" which was false because it was the first time that an arbitration agreement was being added and was also contradictory as to whether it was a new or amended agreement. *Lipsett*, 2024 WL 111247 at *2. The notice in *Lipsett* further "fail[ed] to clearly notify [the plaintiff] about the terms on which he could accept or decline the arbitration provision" because it was internally contradictory as to the method of doing so. *Id.* No such issues are present here. The terms in Plaintiff's agreements were indisputably consistent that they were new agreements that were accepted by use of the account. *See, e.g.*, Beauchamp Decl., Ex. D at 1.

As for the amendments to the Cardmember Agreements, *Lipsett* is irrelevant, because it concerned "New York law," 2024 WL 111247 at *1, while the amendments are governed by Delaware law, Mot. 13-14, which gives banks authority to amend credit card agreements without

an opt-out right. Nor, in any event, does Plaintiff point to any misstatements or inconsistencies in the amendments either. And even if the amendments were somehow defective (and they are not), that would simply mean that the original arbitration agreements still govern. As Barclays explained and Plaintiff does not dispute, each of those original arbitration provisions is sufficient on its own to compel arbitration of this entire dispute. *See* Mot. 18-19.[6]

## III. PLAINTIFF'S G.B.L. § 349 ARGUMENTS ARE MERITLESS

### A. The "Effective Vindication" Exception Does Not Require Plaintiff's G.B.L. § 349 Injunctive Relief Claim To Be Heard In Court

Finally, Plaintiff argues that under the "effective vindication" exception to the Federal Arbitration Act, he must be permitted to litigate his G.B.L. § 349 claim for injunctive relief in this Court. *See* Opp. 15-24. This doctrine "applies in rare cases," *State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59, 91 (2d Cir. 2024), and "allow[s] courts to invalidate agreements that prevent the 'effective vindication' of a federal statutory right," such as when "a provision in an arbitration agreement forbid[s] the assertion of certain statutory rights." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 235-36 (2013). Plaintiff insists that this prevents

[6] There is also no issue—to the extent Plaintiff means to suggest there is one, *see* Opp. 13-14—with the fact that Plaintiff submitted online applications subject to certain terms before he entered into cardmember agreements. The Cardmember Agreements are clear that they are their own agreements with their own consideration (the right to use the credit card). And the application pages Plaintiff attaches advise the applicant that "[t]he use of any account opened in connection with this offer will constitute acceptance of and will be subject to the Cardmember Agreement that will be sent to you." Moore Decl., Ex. 4 at 2, Ex. 6 at 2; *see Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 125 (2d Cir. 2012) ("[W]hen a purchaser opens the packaging for goods and discovers that they are covered by additional provisions, the reasonable purchaser will understand that unless the goods are returned, he or she takes them subject to those provisions."); *Velez v. Credit One Bank*, 2016 WL 324963, at *3 n.8 (E.D.N.Y. Jan. 25, 2016) (compelling arbitration based on credit card agreement despite lack of arbitration provision in card application); *Clookey v. Citibank, N.A.*, 2015 WL 8484514, at *2-4 (N.D.N.Y. Dec. 9, 2015) (similar).

at least his claim for injunctive relief under G.B.L. § 349 from being compelled to arbitration.[7] He is wrong.

First, the "effective vindication" doctrine only applies to federal statutes: "the 'effective vindication' exception serves as a way to reconcile the FAA with all the rest of federal law" and "stems from the principle that other federal statutes are on equal footing with the FAA." *State Farm*, 120 F.4th at 89-90 (cleaned up); *see also Italian Colors*, 570 U.S. at 236-37 (doctrine protects "'effective vindication' of a federal right"). This rationale is obviously inapplicable to state statutes, such as Plaintiff's G.B.L. § 349 claim. *See Frankel v. Citicorp Ins. Servs.*, 2015 WL 6021534, at *2 (E.D.N.Y. Oct. 14, 2015) (rejecting application of "effective vindication" exception to § 349 claim).

Plaintiff argues that the doctrine does apply to state statutes based on *Viking River Cruises, Inc. v. Moriana,* 596 U.S. 639 (2022) and out-of-circuit cases applying it. *See* Opp. 22-24. *Viking River Cruises*, however, considered "a context distinct from" effective vindication: whether the FAA preempted a California state law that "prohibit[ed] parties from waiving representational arbitration." *Cedeno v. Sasson*, 100 F.4th 386, 403 (2d Cir. 2024). Here, Plaintiff makes no reference to any similar state anti-waiver law, so *Viking River* has no applicability.[8]

Second, the "effective vindication" doctrine has no basis for application here because Plaintiff provides no explanation as to how compelling arbitration would limit Plaintiff's

---

[7] To the extent Plaintiff prevails in arguing that the amendments to Plaintiffs' agreements were invalid, this argument should be deferred to the arbitrator since the earlier terms each delegate enforceability disputes to the arbitrator. *See Morehouse*, 2022 WL 912966 at *7 n.8 (effective vindication challenge delegated).

[8] *Gingras v. Think Finance, Inc.*, 922 F.3d 112 (2d Cir. 2019) and the cases like it that Plaintiff cites dealing with the conflict between tribal law and consumer protection statutes (Opp. 22-24) are also inapposite here. And *Gingras* itself confirms that "the Supreme Court has made clear that arbitration agreements that waive a party's right to pursue *federal statutory remedies* are prohibited." 922 F.3d at 127 (emphasis added).

individual remedies. Injunctions under G.B.L. § 349 are subject to the same test as injunctions generally. *See, e.g.*, *Samms v. Abrams*, 198 F. Supp. 3d 311, 315-17 (S.D.N.Y. 2016). To the extent Plaintiff can show an entitlement under this analysis, an arbitrator will be fully empowered to grant injunctive relief through his individual claim.

That makes this case different from those on which Plaintiff relies, *see* Opp. 17-19, which concerned claims that could *only* be brought on a representational basis. For example, Plaintiff relies on *Cedeno*, but at issue there were certain ERISA provisions which provided for "remedies *only* on behalf of and for *the plan*." *Cedeno*, 100 F.4th at 398 (emphasis added). As the court in *Cedeno* explained, because the only "statutory remedies" Cedeno could pursue "run only to *the Plan*" and so could not be brought in arbitration, application of the effective vindication exception was necessary as, otherwise, the plaintiff would be denied the only remedy available to him. *Id.* at 400. Section 349 has no similar feature, and Plaintiff will not be limited in the individual relief he can seek under § 349 by virtue of proceeding in arbitration.

Indeed, Plaintiff's claim is not, as he suggests, somehow inherently representational and therefore inconsistent with arbitration because it would "affect[] the website and, therefore, all users." Opp. 20. It is axiomatic that "even ordinary, party-specific injunctions can incidentally benefit nonparties" and that does not transform an individual claim into one that must be asserted representationally. *Braidwood Mgmt., Inc. v. Becerra*, 104 F.4th 930, 955 n.124 (5th Cir. 2024); *accord Georgia v. President of the United States*, 46 F.4th 1283, 1306 (11th Cir. 2022); *Epic Games, Inc. v. Apple, Inc.*, 73 F.4th 785, 788 (9th Cir. 2023) (Smith, J., concurrence) (similar concerning changes to app store). If Plaintiff seeks an injunction affecting Barclays' website, it would still only be relief on behalf of himself, and he would not be seeking "relief, *on behalf of* or against anyone other than a named party to the arbitration proceeding," as prohibited by the

operative arbitration provisions. Beauchamp Decl., Ex. C at 9 (emphasis added).

Third, to the extent Plaintiff seeks to circumvent the limitations in his agreements on a Rule 23(b)(2) class action, *see* Opp. 21, the Supreme Court has already held that the "effective vindication" exception cannot be used as a blanket measure to invalidate class-action waivers in arbitration agreements. *See Italian Colors*, 570 U.S. at 236-37 (rejecting application of "effective vindication" exception to class action waiver because "[t]he class-action waiver merely limits arbitration to the two contracting parties" and "no more eliminates those parties' right to pursue their statutory remedy than did federal law before its adoption of the class action for legal relief in 1938"). The Supreme Court has made clear that the "effective vindication" doctrine does not bar all limitations on class actions as Plaintiff suggests, and certainly does not do so here where the underlying statute in no way requires that relief be sought on a class or representational basis. *See Cedeno*, 100 F.4th at 400 (distinguishing "waivers of collective-action procedures like class actions" from "waivers that preclude a party from arbitrating in a representational capacity *on behalf of a single absent principal*").

**B. The Agreements Do Not Contain Poison Pill Language**

Plaintiff further argues that, to the extent, the effective vindication exception requires that his G.B.L. § 349 claim for injunctive relief go forward as a class action in this Court, so too should his class action claim for monetary relief. *See* Opp. 24-25. He recognizes that this result would not normally follow but points to clauses in the amended agreements stating that "to the extent it is determined that resolution of a Claim shall proceed on a class basis, it shall so proceed in a court of competent jurisdiction rather than in arbitration." Beauchamp Decl., Ex. C at 10. This language, however, does not suggest that, if one claim must proceed in court, then all *other* claims must avoid arbitration as well. And it is a far cry from the actual "poison pill" provisions in the case law Plaintiff cites. *See, e.g.*, *McArdle v. AT&T Mobility LLC*, 2017 WL 4354998, at *1 (N.D. Cal. Oct.

2, 2017) (clause stating "[i]f this specific provision is found to be unenforceable, then the entirety of this arbitration provision shall be null and void"). This too provides no basis for Plaintiff to avoid arbitration.

## CONCLUSION

For these reasons and those stated in its opening Motion, Barclays respectfully requests that the Court issue an order compelling arbitration and staying this proceeding pending resolution of the arbitration.

Dated: April 2, 2025

By: /s/ *Christina Prusak Chianese*
Christina Prusak Chianese
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599
Email: cchianese@sidley.com

Amy P. Lally (admitted *pro hac vice*)
SIDLEY AUSTIN LLP
1999 Avenue of the Stars, 17th Floor
Los Angeles, CA 90067
Telephone: (310) 595-9500
Facsimile: (310) 595-9501
Email: alally@sidley.com

Ian M. Ross (admitted *pro hac vice*)
SIDLEY AUSTIN LLP
1001 Brickell Bay Drive
Miami, FL 33131
Telephone: (305) 391-5100
Facsimile: (305) 391-5101
Email: iross@sidley.com

*Counsel for Defendant Barclays Bank Delaware*

**WORD COUNT VERIFICATION**

I, Christina Prusak Chianese, certify that according to the word count of the word-processing program used to prepare the foregoing memorandum of law, and exclusive of the portions of it that are excluded by Local Rule 7.1, there are 3,498 words in the document.