UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                             :
LEOPOLD BENNETT,                                             :
                                         Plaintiff,          :
                                                             :          24 Civ. 6549 (LGS)
                     -against-                               :
                                                             :          **OPINION & ORDER**
BARCLAYS BANK DELAWARE,                                      :
                                         Defendant.          :
-------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

Plaintiff Leopold Bennett brought this putative class action against Defendant Barclays

Bank of Delaware ("Defendant" or "Barclays") for sharing Plaintiff's personal information with

Meta.  Plaintiff brings common law tort and contract claims on behalf of himself and a putative

nationwide class and a claim alleging violation of the New York General Business Law on

behalf of himself and a putative New York subclass.  Defendant moved to compel arbitration and

stay this action pending resolution of the arbitration.  Plaintiff opposed.  For the following

reasons, Defendant's motion is granted.

I.      BACKGROUND

The following undisputed facts are taken from the parties' submissions on the motion.

*See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016).

Plaintiff has three credit card accounts with Barclays.  In 2006, Plaintiff applied for and

was approved for a Barclays View-branded account.  The initial terms of the account contained

an arbitration clause requiring any claim between the parties "relating in any way to this

Agreement or your Account" to be resolved exclusively by arbitration.  The terms further state,

"By signing, keeping or using your Card or Account, you agree to the terms and conditions of

this Agreement."  Defendant amended the arbitration provision twice, in 2013 and 2024,

providing for arbitration at the election of either party, but maintaining the broad language quoted above prescribing what claims must be arbitrated.  Plaintiff started to use the account in 2006 and continues to do so.

In 2015 and 2016, Plaintiff applied for and obtained two additional Barclays credit cards, one Upromise-branded account and one JetBlue-branded account.  The initial terms of both accounts contained arbitration provisions that were substantially the same as the View account.  Both arbitration clauses required arbitration at either party's election of claims between the parties relating in any way to the account, and both stated that the customer's use of the credit cards would constitute agreement to the terms.  Defendant updated these arbitration provisions in August 2024 for the Upromise account and September 2024 for the JetBlue account.  Plaintiff began using the Upromise account in 2015 and the JetBlue account in 2017 and continued to use both in 2025.

In support of its motion, Defendant submitted two declarations of Stephenie Beauchamp, Defendant's Vice President of Bank Operations, sworn to on February 25 and April 2, 2025, respectively.  In relevant part, the declarations explain that, when a customer opens a new credit card account, Defendant's customary practice is to mail the customer a package called a "Card Mailer" containing the new credit card, the cardmember agreement then in effect and activation instructions.  The back of each credit card states that "[i]ts use is subject to the terms of your Cardmember Agreement."  The declarations further explain, and authenticate documents showing, that Barclays sent the Card Mailer to Plaintiff -- including the agreement with the arbitration provision -- for each of his three credit card accounts.

II.    STANDARD

The Federal Arbitration Act (the "FAA") states that "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of [the] contract . . . shall be valid, irrevocable, and enforceable."  9 U.S.C. § 2.  "Arbitration is a matter of contract between the parties; it is a way to resolve those disputes -- but only those disputes -- that the parties have agreed to submit to arbitration."  *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 316 (2d Cir. 2021).[1]  "[W]hen deciding if a dispute is arbitrable," courts consider "(1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement encompasses the claims at issue."  *ExxonMobil Oil Corp. v. TIG Ins. Co.*, 44 F.4th 163, 175 (2d Cir. 2022).  In discerning the parties' intent, courts "apply ordinary state-law principles that govern the formation of contracts."  *DDK Hotels*, 6 F.4th at 317.

"In deciding a motion to compel arbitration, courts apply a standard similar to that applicable for a motion for summary judgment."  *ExxonMobil*, 44 F.4th at 175.  "Courts must consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, and must draw all reasonable inferences in favor of the non-moving party."  *Id.*  "Materials submitted in support of or in opposition to a motion for summary judgment must be admissible themselves or must contain evidence that will be presented in admissible form at trial."  *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 169-70 (2d Cir. 2014).

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

III.   **DISCUSSION**

A.      **Plaintiff Received the Arbitration Agreement**

The evidence, properly considered on this motion, shows that Plaintiff received the arbitration agreement contained in his cardmember agreement when he first received each of his three Barclays credit cards.

Consideration of Beauchamp's statements about Plaintiff's receipt of the arbitration agreements is proper.  As Vice President of Bank Operations, she relied on personal knowledge in describing Barclays' customary procedure, when a new credit card account is opened, of mailing the standard cardmember agreement then in effect along with the new credit card.  She relied on properly authenticated business records in stating that the same practice was used to mail Plaintiff the agreement with each of his three newly issued credit cards, and that he thereafter began to use each card.  That her testimony was provided in a sworn declaration is not disqualifying hearsay because she is able give the same testimony live "in admissible form at trial." *Delaney*, 766 F.3d at 170;  *see* Fed. R. Evid. 602 (personal knowledge), 803(6) (business record hearsay exception).

Defendant's customary practice of mailing the cardmember agreement with the physical credit cards creates a presumption under New York law "that those notices have been received by" Plaintiff.  *Nassau Ins. Co. v. Murray*, 386 N.E.2d 1085, 1086 (N.Y. 1978) ("Where . . . the proof exhibits an office practice and procedure followed . . . in the regular course of . . . business, which shows that the notices . . . have been duly addressed and mailed, a presumption arises that those notices have been received . . . ."); *accord U.S. Bank Nat'l Ass'n v. Romano*, 221 N.Y.S.3d 590, 593 (2d Dep't 2024). Plaintiff's subsequent use of each credit card supports the finding that he received the accompanying cardmember agreement.

Plaintiff does not dispute that he received the cardmember agreements, much less proffer any evidence showing that he did not. A plaintiff's "[d]enial of receipt . . . , standing alone, is insufficient to rebut the presumption." *Nassau Ins. Co.*, 386 N.E.2d at 1086; *accord In rem Tax Foreclosure Action No. 53*, 189 N.Y.S.3d 686, 690 (2d Dep't 2023). Barclays has met its burden of showing that Plaintiff received the arbitration agreement. Plaintiff's evidentiary objections to the portions of the Beauchamp declarations on which this Opinion does not rely need not be addressed.

## B.    Contract Formation

Plaintiff agreed to arbitrate this dispute based on his use of each of the three credit cards coupled with the provision in each cardmember agreement that the customer accepts the agreement by using the card. When, as here, the challenge to the arbitration provision is grounded on a challenge to the formation of the contract as a whole, then a court, rather than the arbitrator, must address that issue, even if the contract delegates issues of arbitrability to the arbitrator. *See Coinbase, Inc. v. Suski*, 602 U.S. 143, 151 (2024); *Wu v. Uber Techs., Inc.*, 260 N.E.3d 1060, 1072 (N.Y. 2024).

Whether the parties agreed to arbitrate is a question of state law. *Nicosia*, 834 F.3d at 229. Here, New York law governs because both parties relied on New York law. *See In re Snyder*, 939 F.3d 92, 100 n.2 (2d Cir. 2019) ("[I]mplied consent is sufficient to establish the applicable choice of law . . . ."); *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) (implied consent to application of New York law where the parties' briefs "assume" that it controlled). Defendant expressly relied on New York law and cited multiple cases applying it to argue that Plaintiff agreed to arbitrate. Plaintiff relied on one case to assert that he did not agree to arbitrate -- a non-precedential Second Circuit decision, which also applied New York law.

5

*See Lipsett v. Popular Bank*, No. 22-3193-CV, 2024 WL 111247, at *1 (2d Cir. Jan. 10, 2024) (summary order).  Although the cardmember agreements for all three credit cards include a Delaware choice-of-law clause, the agreements "do[] not determine the law the Court should apply . . . unless and until it is determined that the parties have agreed to and are bound by it." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012); *accord Pilon v. Discovery Commc'ns, LLC*, No. 24 Civ. 4760, 2025 WL 752244, at *9 (S.D.N.Y. Mar. 10, 2025).

In New York, "[a] binding contract requires an objective manifestation of mutual assent, through either words or conduct, to the essential terms comprising the agreement." *Wu*, 260 N.E.3d at 1070.  "Because contract formation is governed by an objective rather than a subjective standard, . . . courts ask whether the offeree was put on inquiry notice of the contractual terms." *Id.*  "An offeree is placed on inquiry notice of contractual terms when those terms are clearly and conspicuously presented to the offeree as a contract and made available for review." *Id.*  The offeree's objective manifestation of assent must be "conduct that a reasonably prudent user would understand to constitute assent." *Id*. at 1073.  "[T]he party seeking to enforce an arbitration agreement bears the burden to prove [mutual assent] by a preponderance of the evidence." *Id*. at 1070.  In *Wu*, the New York Court of Appeals held that the plaintiff had agreed to arbitrate where a website's "clickwrap" process placed the plaintiff on inquiry notice of the contract's terms, including an arbitration provision, and thus "satisfied the contract-formation requirements of offer and acceptance," even though it was unclear whether the plaintiff had clicked the hyperlinks to read any of the provisions before agreeing to the terms of use. *Id*. at 1076-77.

The first requirement of a clear and conspicuous presentation of the contract terms is met here.  The cardmember agreement for each of the three accounts contains: (i) an arbitration

provision under the bold-faced heading, "Arbitration" and (ii) a clause stating that, by using the card, the user "agree[s] to the terms and conditions of this Agreement" also under a bold-faced heading, "Using Your Account/Acceptance of These Terms."  The cardmember agreement, which was sent to Plaintiff with the new credit card, placed him on inquiry notice of both of these contractual terms.  His use of the cards -- each of which said on the back that "[i]ts use is subject to the terms of your Cardmember Agreement" -- objectively manifested his assent to the terms of the cardmember agreement, including the arbitration provision.

This case is unlike *Lipsett v. Popular Bank*, 2024 WL 111247, the case on which Plaintiff relies.  In *Lipsett*, the Second Circuit found that the plaintiff had not agreed to arbitrate because the arbitration provisions were insufficiently clear and conspicuous to put him on inquiry notice. *Id*. at *1.  Specifically, the notice letter was unclear whether the new arbitration provision applied to the plaintiff because the letter "misleadingly states that 'there *continues* to be a Mandatory Arbitration Provision,'" when the plaintiff had never previously been subject to any arbitration requirement.  *Id*. at *2.  In the instant case, there was no error or lack of clarity about the arbitration provision or its applicability to Plaintiff.  He is therefore bound by it.

## C.    Arbitrability

Plaintiff's claims are within the scope of the arbitration agreements.  All of the claims in the Complaint arise out of Barclays' alleged disclosure to Meta of Plaintiff's personal information, which Plaintiff shared with Barclays in connection with his applying for and obtaining Barclays' credit card accounts.  The arbitration provisions in each of the initial cardmember agreements and their amendments require arbitration of any "claim, dispute or controversy . . . arising from or relating in any way to this Agreement or your Account. . . ."  Plaintiff's claims are squarely within the broad scope of the arbitration provisions, and Plaintiff

does not argue otherwise.  As Defendant's updates to the initial terms contain the same language, requiring arbitration of the claims arising from the agreement and the cardmember's accounts, this Opinion does not address whether the updates to the cardmember agreements are effective modifications.

Plaintiff argues that the arbitration clause is unenforceable as to his claim under New York General Business Law § 349 under the "effective vindication" doctrine -- "a judge-made exception to the FAA that invalidates, on public policy grounds, arbitration agreements that operate as a prospective waiver of a party's right to pursue statutory remedies." *State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59, 89 (2d Cir. 2024).  This argument is unpersuasive because, even if the doctrine applies to state law claims (an issue that the parties dispute), the arbitration clause does not "prevent[]" Plaintiff "from effectively vindicating" his § 349 claim.  *Id.* at 91.  "The effective vindication exception applies in rare cases where an arbitration agreement prevents parties from effectively vindicating their statutory rights."  *Id.* (invalidating an arbitration clause where the arbitration process itself was allegedly used to perpetuate fraud and prevented the insurer from effectively vindicating its RICO claims); *cf. Gingras v. Think Fin., Inc.,* 922 F.3d 112, 127 (2d Cir. 2019) (holding that arbitration agreements were unenforceable because they were "designed to avoid federal and state consumer protection laws" by "requir[ing] the application of tribal law only and disclaim[ing] the application of state and federal law").

Here, nothing prevents Plaintiff from seeking relief under § 349 in arbitration, whether that relief is in the form of an injunction or monetary damages.  To the extent that the arbitration provisions prevent Plaintiff from seeking such relief through a class action, that limitation does not "constitute the elimination of [*Plaintiff's*] right to pursue that remedy." *Am. Exp. Co. v.*

8

*Italian Colors Rest.*, 570 U.S. 228, 236 (2013) ("The class-action waiver merely limits arbitration to the two contracting parties.  It no more eliminates those parties' right to pursue their statutory remedy than did federal law before its adoption of the class action [procedure].").

IV.     **CONCLUSION**

For the reasons stated above, Defendant's motion to compel arbitration is **GRANTED**. This case is **STAYED** pending the resolution of arbitration.  Sixty days after the date of this Opinion and Order, and every sixty days thereafter, the parties shall file a joint letter apprising the Court of the status of arbitration.  The parties are directed to inform the Court promptly of any resolution of the arbitration proceedings or any other event that may affect the stay of this matter.

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 67.

Dated: September 19, 2025
       New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

9